## THE STATE OF MARYLAND *vs.* WILLIAM MISTER.

The acts of 1833, ch. 254, and 1837, ch. 310, are *in pari materia*, having one common object, viz., to prevent the destruction of oysters, and are to be construed together as parts of a system, and the appeal to the county court, from the judgment of the magistrate *condemning the vessel*, given by the former act, is not repealed by the latter.

The judgment of the circuit court upon appeal from a judgment of a justice condemning a vessel under the acts of 1833, ch. 254, and 1837, ch. 310, is *final*, and cannot be reviewed by this court.

If no right of appeal had been conferred upon the circuit court, its judgment unwarrantably pronounced on the subject might, by appeal, be reviewed and reversed in this court.

WRIT OF ERROR to the Circuit Court for Somerset county.

The appellee and others, boatmen on board the schooner "Two Sisters," were arrested and brought before a justice of the peace for Somerset county, charged with "having violated the laws of this State, by using scoops or drags in taking or catching of oysters in the waters of this State." The judgment of the justice, rendered on the 19th of March 1851, found the parties guilty, imposed a fine of $10 upon each of them, and condemned the vessel to be forfeited. From the judgment of condemnation, Mister, one of the boatmen, on the 29th of the same month, appealed to the circuit court for Somerset county, which court, (SPENCE, J.,) reversed the judgment of the justice, and pronounced it void. To review this judgment of reversal, the writ of error in this case was sued out by the State.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J., upon a motion by the appellee to quash the writ of error.

*Wm. Daniel* and *Wm. S. Waters* for the motion, insisted, that the writ should be quashed for the following reasons, which they argued at length :

1st. This court has no jurisdiction of this case.

2nd. The judgment in the court below set out in the record

was a summary proceeding, founded upon the acts of 1833, ch. 254, and 1837, ch. 310, not in conformity to the common law, and therefore no writ of error is allowed. 1 *G. & J.*, 197, *Williamson vs. Carnan.* 1 *Salk.*, 200, *Groenvelt vs. Burwell.* 3 *Croke*, 644, *Cortles' case.* 2 *Cowp.*, 523, *Hartley vs. Hooker.* 3 *Mass.*, 305, *Melvin vs. Bridge.* 3 *Gill*, 497, *Savage Manf. Co., vs. Owings.*

3rd. These statutes created a new offence unknown to the common law, and prescribed a specific mode of punishment unknown to the common law, hence the specific directions of the statute cannot be departed from, and the common law remedies are inapplicable. 1 *Burr.*, 543, *Rex vs. Wright.* 2 *Burr.*, 803, *Rex vs. Robinson.* 2 *Strange*, 679, *Rex vs. Buck.*

4th. The statutes upon which the proceedings below were had provides an appeal, and therefore such appeal is final, and cannot be reviewed in this court upon writ of error. 8 *G. & J.*, 443, *Wilmington and Susquehanna Rail Road Co., vs. Condon*, and cases cited on the 2nd point. The appeal granted by the act of 1837 is not repealed by the subsequent act of 1837, and the two are to be construed together, being in *pari materia.* See also the act of 1849, ch. 217.

*Charles J. M. Gwinn* for the State.

The case of *Webster vs. Cockey*, 9 *Gill*, 93, clearly shows, that though, if a right of appeal to the circuit court was given by the acts of Assembly in question, this court could exercise no jurisdiction over the case, yet if *no such right of appeal* is given, the judgment of the circuit court, unwarrantably pronounced, may be reviewed and reversed by this court. Now it is contended on the part of the State, that the right of appeal existing under the act of 1833, ch. 254, is abrogated by the act of 1837, ch. 310. The third section of the latter act confides the jurisdiction of the class of cases to which the act refers to a single justice, without providing for any appeal whatever. In the sixth section the act settles the distribution of the fund arising from the sale, which the justice is empowered to order. The seventh section repeals all laws inconsistent with the fore-

going provisions, and surely none can be more inconsistent with the third section, providing for a sale on ten days' notice, than the provision in the law of 1833, ch. 254, which delays the sale and distribution upon the acceptance of an appeal bond. In a word, the act of 1837, ch. 310, secs. 3 and 6, is wholly inconsistent with the act of 1833, ch. 554, secs. 3, 4 and 5. To the extent of this inconsistency the act of 1833 is repealed by the act of 1837.

It has been supposed this right of appeal is revived by the act of 1849, ch. 217, because the proviso of the first section of this act recognises the *punishment* provided for by the act of 1833, ch. 254. But this view cannot be sustained. It is not pretended by the State that the *punishment* regulated by the act of 1833, was repealed by the act of 1837, for the act of 1837, according to the construction now maintained, did not alter the *punishment,* but only rescinded the right of appeal from the judgment inflicting the punishment.

ECCLESTON, J., delivered the opinion of this court.

The acts of 1833, ch. 254, and 1837, ch. 310, were passed for the purpose of preventing the destruction of oysters in this State, and impose certain penalties for the violation of their provisions.

The case now brought before us by a writ of error, commenced before a justice of the peace in Somerset county, whose judgment imposed a fine of $10 upon the defendant, and forfeited the vessel. The amount of the fine shows that it was imposed under the act of 1837, as that act prescribes a fine of not less than $5 nor more than $50, whilst the former law makes $5 the maximum of the fine for each of the boatmen. From the decision of the justice condemning the boat, an appeal was taken to the circuit court for Somerset county; where, after a jury trial, the court reversed the magistrate's judgment, and under the present writ of error we are asked to reverse the last decision. But our attention is first called to the consideration of a motion to dismiss or quash the writ of error.

Several reasons in support of this motion have been filed on

the part of the defendant, but our view of the matter renders it unnecessary to notice any other than the fourth, which is: that the statutes upon which the proceedings below were had provide an appeal, and therefore such appeal is final, and cannot be reviewed in this court upon a writ of error.

So far as the appeal to the circuit court was authorised by law, we have no control over their decision. But the counsel for the State denies the existence of any authority for that appeal. He says although the act of 1833 gives a right of appeal, no such right is given in that of 1837; and the provisions of the latter are so essentially different from those of the former, as to the nature of the offence prohibited and the amount of the fine, that the appeal given in the first statute cannot be applicable to a case arising under the last. In this we do not agreee with him.

The two laws are in *pari materia,* having one common object—preventing the destruction of oysters—and are to be construed as parts of a system. The first act makes it unlawful to catch oysters in any of the waters of this State with a scoop or drag, or any other instrument, than such tongs or rakes as were then in use and authorised by law. The sheriff is the officer who is to seize the vessel, arrest the boatmen, and take them before a justice of the peace. His powers are defined, and the manner of proceeding on his part, as well as the duty of the magistrate, are prescribed. A fine is provided for in regard to each offending boatmen, and the vessel is forfeited.

The first section of the act of 1837 is, "that from and after the passage of this act, the powers and authority granted in the law to which this is a supplement, to the sheriff of the counties, shall be, and are hereby granted to all constables, and all other officers, civil and military, to carry into effect the provisions of that law, and of the several sections hereinafter contained, and that the mode of proceeding under this law shall be such as is therein prescribed for the action of the sheriff."

The third section authorises a fine of not less than $5 nor more than $50, and also the forfeiture of the vessel, "for every offence committed against the provisions of this law, or

State *vs.* Mister.

the act to which this is a supplement," that being the act of 1833.

Thus the last law adopts the provisions of the first as the rules to govern the arresting officer, only giving the authority which the sheriff had, to other officers, but without annulling his. The forfeiture of the vessel is provided for in both; and the third section of the act of 1837 recognises the acts prohibited by the former law, as offences still against the provisions of that law. It cannot therefore be true, as has been contended, that in any of these respects the repealing clause of the last act repeals the former, for it only professes to repeal "all laws or part of laws inconsistent with the provisions" of the act itself.

In this case the charge against the party before the justice was, for "having violated the laws of this State, by using scoops or drags in taking or catching of oysters in the waters of this State." And the judgment of the justice was, for "having violated the laws of this State, by taking or catching of oysters in the waters of this State with scoops or drags." The offence charged by the State in the circuit court is of the same character. It is therefore manifest that the trial was for an offence against the provisions of the act of 1833. And although the fine imposed, from its amount, shows it was imposed under the last law, and notwithstanding the arrest may have been made, not by a sheriff, but by an officer deriving his authority from that law, nevertheless, as these acts are so intimately connected in their provisions, in regard to a case like this, and as the first law gives the right of appeal to either of the boatmen, thinking himself aggrieved by a judgment *condemning the vessel* for a violation of the provisions of that statute, we think the right of appeal applies to the judgment of condemnation in the present case.

The appeal to the circuit court being authorised in reference to the condemnation of the vessel, the decision of that tribunal to that extent was final, and we cannot revise it. See 8 *G. & J.*, 443, *Wilmington and Susquehanna Rail Road Company, vs. Condon*, and 9 *Gill*, 92, *Webster, et al., vs. Cockey, et al.*

In 7 *Gill*, 304, *Williams vs. Williams*, the court say: "Very sound reasons should be required to induce the court to refuse

a party the benefit of an appeal, and any interference with the right, wherever it exists, must be upon strong grounds, and a clear manifestation on the part of the legislature that they designed to withdraw it." We do not perceive any such design clearly manifested by the act of 1837 in reference to that of 1833.

By the act of 1849, ch. 217, the legislature have again recognised the continued existence of the original act, by subjecting to presentment and indictment a party who may commit an offence against the provisions of the first section of that original act; and by providing that if the person so presented and indicted, shall prove at the trial that he has been punished under the provisions of the act of 1833, he shall be discharged from further prosecution. The second section of the act of 1849 authorises the condemnation of a vessel where the boatmen shall fly from or abandon her, and directs the mode of proceeding. But, nevertheless, it gives the owner the right to appeal from the judgment of condemnation.

When these various acts are considered in connection, (as we think they should be,) we see no just reason for supposing that the right of appeal provided for by the act of 1833, does not exist in such a case as the present.

But this right of appeal relates only to the magistrate's judgment condemning the vessel, as will be seen by reference to the third, fourth and fifth sections. The judgment imposing the fine is made final by the second section.

Our construction of the two statutes before us, is consistent with the principle which governed this court in the case of *Glenn vs. The Chesapeake Bank, Alexander, et al.,* 3 *Md. Rep.,* 478. There the question was, whether the transcript of the record had been transmitted to the Court of Appeals within the time prescribed by law. The act of 1842, ch. 288, provides, that no appeal then pending, or thereafter to be pending, shall be dismissed, because the record shall not have been transmitted within the time required by law, if it appear to the court that the delay was the result of negligence or omission by the clerk, and without default of the party.

The act of 1849, ch. 88, is the only law which authorises

appeals from orders or decrees in cases of insolvency. It requires the appeal to be entered within thirty days, and a certified copy of the record to be transmitted to the appellate court within sixty days from the date of the decision.

The record in that case was not sent up until after the sixty days had expired. On a motion to dismiss it was insisted, that inasmuch as no right of appeal existed in such a case until the act of 1849, by which it was given, and as the provisions of that statute, in express terms, required a certified copy of the record to be transmitted within a given number of days, which had not been done, the motion ought to be sustained, and the act of 1842 could have no bearing or influence on such a case. But the court held, that the two statutes "ought to be viewed in connection." And they refused to dismiss the appeal upon the order, where the appeal was entered in time, although the record did not go up within the sixty days. The motion was sustained in reference to an order on which the appeal was entered too late.

An objection has been made, in argument, in reference to the appeal to the circuit court, because the judgment of the magistrate was against several parties, whereas the appeal was taken by only one of them. Admitting, (but without deciding,) that the appeal ought to have been taken by all the parties, the failure to do so was an error which should have been taken advantage of in the circuit court. The decision in 9 *Gill*, 92, was, that where no right of appeal had been conferred on the county court, then "its judgments unwarrantably pronounced on the subject might, by appeal, be reviewed and reversed in this court." We have said the circuit court has jurisdiction in appeals on judgments condemning the vessels, we therefore cannot revise any erroneous decision made by that court in reference to such cases. For in the case just referred to it is most distinctly announced, that if the right of appeal was given by the legislature to the county court, its judgments thereon could not be reviewed on appeal to this court, unless the latter right of appeal was also given.

The appeal bond and the petition filed in the circuit court

3    v.5

show, that the appeal to that tribunal was on the judgment condemning the vessel, and their decision on such an appeal being final and conclusive, the writ of error must be quashed.

*Writ of error quashed.*