STATE vs. JAMES HUGHES.

On the trial of an indictment for maintaining a common nuisance, namely, a place used for "the illegal sale and keeping of intoxicating liquors," evidence was admitted, against the defendant's objections, that an analysis of the liquors showed them to contain 4.55 to 4.72 per cent. by weight of alcohol.

Held, no error. The jury was to determine whether the liquors were intoxicating, and evidence of their alcoholic strength was pertinent.

A statute, Pub. Stat. R. I. cap. 80, § 1, made places used for the illegal sale of intoxicating liquors "common nuisances." A subsequent statute prohibiting the sale of intoxicating liquors, Pub. Laws R. I. cap. 634, § 1, of May 4, 1887, provided that the "words intoxicating liquors . . . used in this act" should include liquors containing more than two per cent. by weight of alcohol.

Held, that the two statutes were to be construed together, and that the illegal sale of liquors containing more than two per cent. by weight of alcohol made the building used for such sale a common nuisance.

To convict a defendant under the nuisance act it is not necessary to show that he knew the liquors sold to be intoxicating. The law presumes his knowledge of the kind and quality of the liquors which he sells.

EXCEPTIONS to the Court of Common Pleas.

January 4, 1889. STINESS, J. Upon an indictment charging that the defendant kept and maintained a common nuisance, to wit, a "building, place, and tenement used for the illegal sale and keeping of intoxicating liquors," it appeared that the sample of

beer seized upon the defendant's premises showed in analysis from 4.55 to 4.72 per cent of alcohol by weight. To the admission of this evidence the defendant excepted, and he also asked the court to instruct the jury " that the evidence introduced by the State as to the percentage by weight of alcohol in the liquor seized by the State is not evidence that the liquor seized was intoxicating." This request was refused. We think the introduction of the evidence and the refusal of the request were proper. It is a fact of common knowledge that alcohol intoxicates ; and, consequently, evidence of the proportion of alcohol contained in a liquor tends directly to show its character and strength. The presence of alcohol may be so considerable as necessarily to raise a presumption of the intoxicating quality of the liquor, or so insignificant as to prevent such a presumption, or, at least, to make it doubtful. Whether the liquor found on the defendant's premises was intoxicating or not, was a question of fact for the jury ; and, upon this question, evidence of its strength, as disclosed by analysis, was pertinent.

The second request for instruction was this : " That Pub. Laws R. I. cap. 634, § 1, of May 4, 1887, is not applicable to the charge preferred in this case." The argument is that the nuisance act, so called, Pub. Stat. R. I. cap. 80, § 1, relates only to intoxicating liquors, and that chapter 634, § 1, passed subsequently, which provided, " Wherever the words intoxicating liquors shall be used in this act, it shall be deemed to include ale, wine, rum, or other strong or malt liquors, or any mixed liquors, a part of which is ale, wine, rum, or other strong or malt liquors, or any liquor or mixture of liquors which shall contain more than two per cent. by weight of alcohol ; but no provision of this act shall be construed to permit the sale of any liquor or mixture of liquors which shall contain less than two per cent. of alcohol, if the same shall be intoxicating," cannot be construed to apply to the nuisance act, because it would enlarge its scope by declaring that to be intoxicating which may not be in fact intoxicating.

The nuisance act declares all buildings, etc., used for the illegal sale or keeping of intoxicating liquors to be common nuisances. It does not define what shall be legal or illegal sale or keeping, or what shall be included within the term " intoxicating liquors." It

evidently points to another law for these definitions; namely, to the law as it is, or may be, in regard to the sale of liquors. To ascertain the offence both laws must be looked to, for as to this offence they are, in effect, one law. The offence under the nuisance act consists in using a place for the illegal sale or keeping of intoxicating liquors. The illegal sale and keeping goes along, *pari passu*, with the liquor law. Thus Gray, J., in *Commonwealth* v. *Carpenter*, 100 Mass. 204, referring to the sections of the nuisance act of Massachusetts, similar to our own, says: " These sections do not undertake to define what sale or keeping of intoxicating liquors shall be illegal, but leave that to be ascertained from other statutes from time to time." So in *Commonwealth* v. *Shea*, 14 Gray, 386, Metcalf, J., says: " The provision of St.·1855, c. 405, § 1, by which ' all buildings, places, or· tenements used for the illegal sale or keeping of intoxicating liquors are declared to be common nuisances, and are to be treated and regarded as such,' is to be construed by reference to the St. 1855, c. 215, *in pari materia*, to which it is necessary to refer in order to ascertain what intoxicating liquors it is illegal to sell, and the first section of which declares that ' ale, porter, strong beer, lager beer, cider, and all wines, shall be considered intoxicating liquors within the meaning of this act.' Proof of sales of cider was therefore competent in support of this indictment." It is true, in this case, the liquor law preceded the nuisance law; but if the two have a common object and are parts of one system for the punishment of illegal selling and keeping of liquors, they are to be construed together, and equally so, whatever may be the order of their passage. See *State* v. *Mister*, 5 Md. 11. This is in conformity to the course of legislation and administration of these laws in this State. The nuisance act, substantially in its present form, was passed in January, 1857, a prohibitory law existing at the time. At the January session, 1862, the prohibitory law was repealed and a license law enacted in its stead. At the same time the nuisance act was amended to exempt licensed grog shops, and to declare that only those which had no license were to be regarded as nuisances. The liquor law was repealed in January, 1867, and another law enacted, and, in the Digest of 1872, section one of the nuisance law was restored to its original and present form. Many

changes have been made in the liquor laws since then.   There have been prohibitory, license, and local option provisions; authority to sell and the kinds of liquor included in the acts have varied; for example, the sale of cider, domestic beer, and wines and imported liquors in original packages have at times been allowed and at other times forbidden.   Yet, all along, section one of the nuisance act has remained unchanged, and without reënactment, except as the laws fell together in the revision of 1882. Under these varying forms of illegal sale and keeping of intoxicating liquors the nuisance act has been administered by the courts, without, so far as we know, any question having been raised as to the application of changes in the liquor law to the nuisance law.   There seems to have been a general, and we think a correct, assumption that a change in the former operated to change the latter; in other words, that a law defining an illegal sale and keeping of liquors defines, by necessary reference, one element of a common nuisance, and has application, therefore, to the offence of keeping a common nuisance.

As we have been referred to no cases, and know of none except those cited above, where this question has been directly raised, we infer that changes in the law in other states which have a nuisance law similar to ours have been considered to have a like effect.   If reference may be had to the liquor law to determine what is meant by the term "illegal keeping," we think reference may also be had to it to determine what is meant by the term "intoxicating liquors."   Chapter 634 does not declare that the liquors therein described are intoxicating, but it defines the use of the term "intoxicating liquors" by showing what liquors it is unlawful to keep for sale.   In this view the law is not retroactive, for it operates only from its passage, and makes nothing criminal that had been innocently done before, but amendatory, by declaring what liquors it shall thenceforth be unlawful to keep for sale.

The third exception is decided in the case of *State* v. *Guinness*, *ante*, p. 401.

The fourth exception is that the court refused to instruct the jury that they must find that the defendant knew that the liquor sold at his place was intoxicating in order to convict him.   We think the request was properly refused.

The purpose of the law is to prevent the sale of certain liquors. If they are sold or kept for sale the offence is committed. If a person deals in liquors of that character he is bound to know their kind and quality. Otherwise, laws like this would have very little force. Take, for instance, the law designed to protect the community from the sale of inflammable and dangerous oils. If a dealer could sell such oils and still shield himself by saying that he did not know their quality, the law would be of little practical efficiency. The offence consists in keeping the thing prohibited with intent to sell it. The same question has arisen in Massachusetts, where it has been decided that it was no defence to show that the defendant did not know or believe that the liquor was of the character prohibited. *Commonwealth* v. *Savery*, 145 Mass. 212, and cases cited. *Commonwealth* v. *Uhrig*, 138 Mass. 492. See, also, Wharton's Criminal Law, 8th ed. § 1527; *State* v. *Smith*, 10 R. I. 258.                        *Exceptions overruled.*

*Horatio Rogers*, Attorney General, for plaintiff.

*Charles H. Page & Franklin P. Owen*, for defendant.