**Mark SCHLOER, Appellant (Respondent Below),**

v.

**Janet MORAN, Appellee (Petitioner Below),**

**and**

**Edward A. Lukawski, Kenneth R. Petersen and James W. Holland, as Members of the Lake County Election Board, Appellees (Respondents Below).**

No. 985S360.

Supreme Court of Indiana.

Sept. 11, 1985.

James L. Wieser, Highland, John C. Ruckelshaus, Walter F. Lockhart, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for appellant.

William J. Moran, Highland, for appellee Moran.

Edward H. Feldman, Asst. Lake County Atty., Crown Point, for appellees Lake County Election Bd.

PIVARNIK, Justice.

This cause comes to us by way of a Petition to Transfer from the Third District Court of Appeals brought by Appellant Mark Schloer. Mark Schloer is, and has been at all times pertinent to these proceedings, employed by the City of Hammond as a police officer. In addition, Schloer was a candidate for City Council in the Fourth District of the City of Hammond at the November 8, 1983, general election. Appellee Janet Moran also was a candidate for that office at that election. After the

election ended in a tie, Moran filed a "Petition For Recount" on November 17, 1983. On November 23, 1983, Schloer filed his "Cross-Petition for Recount" also requesting to contest the election. The trial court granted these petitions and appointed a three-member recount commission pursuant to Ind.Code § 3–1–27–1 *et seq.*, which convened on December 2, 1983, to examine, review and tally all votes cast in the Fourth Councilmanic District election. Upon concluding the recount, the commission certified to the trial court that the election remained tied with each candidate receiving 3,090 votes. On December 12, 1983, Moran filed her "Amended Count II" alleging that the ballots were not correctly counted and that Schloer was ineligible to be either a candidate or to serve as a councilman in the Fourth District by virtue of his employment as a police officer in the City of Hammond. On December 14, 1983, at the commencement of the hearing on the parties' respective petitions for contest, Schloer orally moved pursuant to Ind.R. Tr.P. 12(B)(1) and 12(B)(6) to dismiss Moran's amended petition for the following two reasons: 1) Ind.Code § 36–8–3–12 (Burns 1981) specifically permits police officers to be candidates for elective office, and 2) the issue is not ripe for review pursuant to Ind.Code § 3–1–28–1 until, and only if, Schloer is declared the winner. The trial court denied Schloer's motions and the hearing continued during the 14th and 15th days of December, 1983, on the issues contained in the various petitions. On December 23, 1983, the trial court entered the following judgment:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. That upon review of all votes cast in the election for the 4th Councilmanic District of Hammond, including all absentee ballots, a tie vote has resulted in that each candidate has received a total of Three Thousand Ninety-one (3,091) votes.

2. That no material irregularity, fraud or tampering with the vote total occurred in precinct 4–12, and that an unsnapped seal in and of itself, is not sufficient to disqualify the votes cast on said machine. Further, there being no evidence of such material irregularity, fraud or tampering, and further, based upon the evidence of the Chief Mechanic, Steve Popka, and the results of the Grand Jury investigation, the vote total on said machine shall be upheld and included in the entire total.

3. That the Respondent Schloer is not eligible to serve as a member of the City Council, the legislative branch of the City of Hammond, because of his employment as a policeman in the executive branch of the City of Hammond, Indiana.

4. That the Petitioner, JANET C. MORAN, be and is hereby found and declared to be the winner of the general election held on November 8, 1983, in the City of Hammond for the 4th District Council. Further, the Clerk is hereby directed and ordered to certify to the Hammond City Council that the winner of said election is JANET C. MORAN and that the Respondent, MARK SCHLOER, is not the winner of the election nor is he eligible to serve by virtue of his employment by the City of Hammond as a policeman. Further, that Respondent LUKAWSKI, as Clerk of the Circuit Court, is ordered to deliver forthwith a certificate of election to Petitioner MORAN."

On January 12, 1984, Schloer filed his "Motion To Correct Errors" and on February 2, 1984, Moran filed her "Petitioner's Cross-Motion to Correct Errors." After considering both motions, the trial court denied Schloer's motion and granted in part Moran's cross-motion. In particular, the trial court modified its order of December 23, 1983, and entered the following additional "Order":

"... Specifically, the [trial] Court finds that pursuant to the decision of the Supreme Court of Indiana entered January 4, 1984, in *Schoffstall v. Kaperak* (1984) 457 N.E.2d 550 that the irregularities affecting the voting machine in Hammond precinct 4–12 in violation of the requirements of IC 3–1–25–6, IC 3–1–

24–9 and IC 3–1–24–12 require that the votes cast on that machine be disregarded and not counted. The votes cast on said machine total 342 of which the Respondent SCHLOER received 227 and the Petitioner 115. That each of their vote totals should be reduced accordingly and that the Respondent SCHLOER's total vote at the election on November 8, 1983 is 2,864 and the Petitioner MORAN's 2,976 and that she should therefore be declared the winner of said election.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the judgment of this Court of December 23, 1983, is modified and amended to declare that the Petitioner JANET C. MORAN is the winner in the election held on November 8, 1983, for the 4th Councilman's district, Hammond, Indiana in that she received a total of 2,976 votes and the Respondent, MARK SCHLOER, a total of 2,864 votes. In all other particulars the judgment of this Court of December 23, 1983, is confirmed.

DATED the 21st day of February, 1984."

Thereafter, this appeal was commenced by Schloer who filed his Praecipe on March 6, 1984.

On appeal, the Court of Appeals considered only one issue to be dispositive of the cause, that being: "whether the trial court erred in determining that a city police officer may not serve as a member of the city council." The Court of Appeals considered this single issue and found that Schloer was not qualified, as a matter of law, to *serve* as a member of the City Council of Hammond. The Court of Appeals, 475 N.E.2d 1193, accordingly affirmed the trial court on that basis citing *Rush v. Carter,* (1984) Ind.App., 468 N.E.2d 236, *trans. denied.* The dispositive issue in this cause, however, is not whether Schloer was qualified to *serve* on the City Council of Hammond but whether he was qualified *to be a candidate* for such post. We now grant transfer of this cause and vacate the opinion of the Court of Appeals. Moreover, we will consider all issues before

the trial court and preserved for this appeal.

■■■ The Court of Appeals affirmed the trial court in its finding and judgment that Schloer was not eligible to serve as a member of the City Council of Hammond because of his employment as a policeman in the executive branch of the City of Hammond. The Court of Appeals erred in relying on its own opinion in *Rush* since *Rush* is factually distinct from the instant case and therefore is not dispositive of the issues here. The facts in *Rush* were that Rush was holding office as a county police officer when elected to the post of county council and was attempting to hold and perform the duties of both offices. The Court of Appeals held in *Rush* that even considering the fact that county police officers are not "public officers" but are employees of the office of the sheriff, they are still subject to the provisions of Art. 3, § 1, of the State Constitution which provides:

"The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

This Court provided in *State ex rel. Black v. Burch,* (1948) 226 Ind. 445, 80 N.E.2d 294, Emmert, J., dissenting, 225 Ind. 445, 80 N.E.2d 560, *reh. denied,* 226 Ind. 445, 81 N.E.2d 850, that the object of the separation of powers provision of our Constitution is to preclude a commingling of three essentially different powers in the same hands in the sense that the acts of each shall never be controlled by, or in any subjected to, the coercive influence of either of the others. Although Art. 3, § 1 of the Indiana Constitution clearly does not apply to cities, our Indiana Legislature has provided in Ind.Code § 36–4–4–2 (Burns 1981) as follows:

"DIVISION OF POWERS. The powers of a city are divided between the executive and legislative branches of its

464

government. A power belonging to one branch of a city's government may not be exercised by the other branch."

The principles set out by our Legislature in this statute tracks those of Art. 3, § 1, of the Constitution of Indiana regarding state officers and offices. The Legislature also provided in Ind.Code § 36–8–3–12 (Burns 1981):

"Members of the safety board and members of the police or fire department may be candidates for elective office and may, as long as they are not in uniform and not on duty, solicit votes and campaign funds and challenge voters for the office for which they are candidates."

It is true that Schloer could not *serve* as a Hammond Police Officer in the executive branch of government and at the same time serve on the Hammond City Council performing legislative duties for the City of Hammond. He would, as *Rush* indicates, be sitting as a councilman, directing salaries and expenditures for himself and his fellow city policemen in the executive branch of government, a patent violation of the division of city powers statute and conflict of interest. This was not the question in this case, however, since Schloer had not yet been elected to the City Council of Hammond. The only question before the trial court in this case was whether Schloer was qualified to be a *candidate* for the office of City Councilman. Only after he was elected would the question of his service in both departments arise. Any disqualifications that might be reasoned because of his position on the city police department could be removed at that time by his resignation from that position. It is not unusual and is, in fact, quite normal in our political processes that persons in one department, whether on a local or state level, run for offices in one of the other branches of government well knowing they could not serve in both capacities but contemplating, on their election to the office sought, that they would resign from the one held before the election. This does not render the person seeking the new office "disqualified" for the office he seeks. He, of course, could not *serve* in both offices if

elected to the second but that is a different question to be reached when and if it arises. It did not arise in this cause and Schloer certainly was qualified to be a candidate for the office he sought.

■ An additional basis on which the trial court found that Moran should be declared the winner of the election concerned certain irregularities with the voting machine in Hammond Precinct 4–12. Ind.Code §§ 3–1–25–6, 3–1–24–9, and 3–1–24–12 (Burns 1982) provide as follows:

"[3–1–25–6] In those counties employing voting machines at any primary or election, the vote, as registered on such machines, shall be taken and certified at the precinct polling place upon the closing of the polls, ... When such totals shall be so taken and certified, *each such machine shall be sealed* by the inspector in the presence of such precinct election board....

[3–1–24–9] ... as soon as the polls of the election are closed, the inspector, in the presence of the judges and clerks, shall *immediately lock the voting machine* against voting.... The certificates of the number of votes cast for each person shall be made and signed as required in this article.... And such certificates and other papers shall be returned to the office of the clerk of the circuit court in the same manner, under the same regulations and penalties as are prescribed in this article for election returns from precincts in which no voting machines are used.

[3–1–24–12] When the machine is locked at the close of an election, in the manner required by this article [3–1–24–1—3–1–24–13], the inspector shall place all the keys of the machine on a strong and sufficient string or wire, label the same with the make and number of the machine and precinct at which used at such election, and *return such keys, ...*" (emphasis added).

After the election and during the recount procedures, it was detected that on the machine used in Hammond Precinct 4–12

the "closing seal" was not snapped. To seal the machine after voting was completed and the machine was locked, the seal had to be in a position such that it would need to be broken in order to reopen the machine. To provide for this, the seal had to be locked or snapped into position. In this case the seal was slipped into the proper place but it was not snapped or locked and could be slipped out again. The machine therefore was not properly sealed. There were other irregularities also. Chief Deputy Clerk Stephen Popka testified in detail as to the procedures followed in setting up, voting and locking a machine. Deputy Popka, a member of the three person recount commission above mentioned, was the voting machine mechanic authorized by the Clerk to handle such duties. The procedure contemplated by the statutes above and described by Popka are that the machine is delivered to the precinct set up for voting. This means that all labels are properly placed on the machine and the counting dials are at zero. The machine is then sealed, said "opening seal" to be removed by the precinct election board on the morning of the election as it prepares to receive the electors. There are four keys provided for the voting machine, only two of which are put in the possession and use of the precinct election board. Keys two and three are delivered to the precinct board to be used to open the machine and to set it up for voting. One of them opens the front doors and activates the portion of the machine used by the voter. The other key opens a rear door which exposes the counter so that the tabulation of votes can be made. At the end of the day and after all votes are counted, the precinct election board checks its tally sheets to determine the number of votes cast and compares that number with those showing on the counter tabulations on the machine. There are two counter positions and both must correspond with the tally sheets. That was done in this case and it indicated that 355 votes were cast on that machine. It was then the duty of the precinct election board to use keys two and three to lock the machine and then to seal the machine with

the "closing seal." Keys two and three along with the "opening seal" were to be put into a certain marked envelope and returned to the auditor's office. Thus, it could be determined that the precinct board found the machine properly prepared and sealed, that they removed that opening seal and set up the machine for voting, that they voted the electors that day and could show that the number of votes appearing on that machine corresponded with their tally sheets and that they locked and sealed the machine with a closing seal to indicate that nothing further had been done to that machine after closing. In this case, neither the keys used by the precinct board nor the opening seal were found. Keys two and three and the opening seal to the machine were somehow lost and were not available to the election board or to those recounting the votes. This is in addition to the fact that the machine was not sealed when the recount was attempted.

The trial court found that pursuant to this Court's opinion in *Schoffstall, supra,* none of the votes cast on the machine in precinct 4–12 should be counted. We agree. *Schoffstall* involved electronic voting equipment but concerned, *inter alia,* the delivery of the vote results to the clerk's office by the precinct board in a transfer case provided for that purpose. Ind.Code § 3–2–4–5(b) (Burns 1982) provided that all of the votes reports were to be put into the transfer case and the case was to be locked *and sealed* until it reached the central counting area of the clerk's office in the courthouse provided therefor. In *Schoffstall,* the votes from one of the precincts arrived with the transfer case unsealed. This Court noted that it was most unfortunate to reject all of the ballots cast in that precinct but found:

> "[I]t is the only way at this juncture that we can be assured that the law is being complied with and the integrity of the voting process is maintained."

*Schoffstall,* 457 N.E.2d at 555.

We found this notwithstanding the fact that there was no evidence or allegation of mischief or purposeful fraud in the precinct

involved since the statute is clear in its provisions and its purpose is very apparent. The same is true of the instant case. There is no showing here that there was any fraud or intended mischief by the precinct election board or by anyone else regarding the machine at that precinct. The Legislature, however, has provided a mandatory procedure to insure a proper and accurate recording of the votes cast in every precinct. Witness Popka testified that once the precinct board locked the machine, even though it was not sealed, no one could reopen it and change any of the voting totals without having key 4 which was in his possession. Popka specifically testified it was necessary to have this key to unlock the machine and to set it up so that a change could be made in the results. It therefore was his opinion that it was impossible for the precinct board or for anyone else to change the totals on that machine even though it was not sealed. This does nothing more than place a conflict in the evidence before the trial court. The Legislature in Ind.Code § 3–1–25–6 made it mandatory that the board inspector seal the machine in the presence of the entire bipartisan precinct election board and that the closing seal remain sealed until the next procedure required its opening. The Legislature in Ind.Code § 3–1–24–12 also made it mandatory that the keys in the possession of the precinct board be returned to the County Auditor as provided therefor. Furthermore, the standard procedure followed in all of the precincts in Lake County was to remove the opening seal and to turn it in with the keys and other voting materials. None of these things were done by this precinct board. We therefore affirm the trial court in its finding that all of the votes cast with this machine and in Hammond precinct 4–12 must be rejected and subtracted from the respective totals of the two candidates. As in *Schoffstall*, we find this most unfortunate in that it disenfranchises innocent voters who had every right to expect that the votes they cast for their candidates would be respected and counted. We hope they can take comfort in the fact that these laws are provided and are enforced to insure that their votes and the votes of all the citizens of this State will be properly counted and only those people who have truly received the highest number of votes will hold office.

The trial court found that the votes cast on the machine in Precinct 4–12 in the City of Hammond should be disregarded and not counted. The trial court further found that the machine indicated there were 342 votes cast for the office of concern here and that Schloer received 227 of those votes and that Moran received 115. Reducing the vote totals by these amounts reduced Moran's total to 2,976 votes and Schloer's total to 2,864 votes. The trial court therefore declared Moran to be the winner of the election. The trial judge entered judgment accordingly and decreed that Janet C. Moran was the winner of the election held on November 8, 1983, for the Fourth Councilmanic District in Hammond, Indiana. We agree. Issues were raised by the parties concerning a very small number of other contested votes that would not be dispositive of any issues here as they would not change the totals sufficiently to affect the judgment. We therefore will not consider those issues.

The opinion of the Court of Appeals is vacated and this cause is remanded to the trial court to amend its judgment consistent with this opinion.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER and SHEPARD, JJ., not participating.