STATE

v.

**Alejandro YANEZ.**

No. 97–110–C.A.

Supreme Court of Rhode Island.

Aug. 4, 1998.

Aaron L. Weisman, Asst. Attorney General, for plaintiff.

Mary June Ciresi, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

The principal issue presented by this case is whether a reasonable mistake of fact concerning a complainant's age may be asserted as a defense to a charge of statutory-rape. For the reasons articulated in this opinion, we hold that with respect to the age requirement first-degree child-molestation sexual assault is a strict-liability offense. Consequently a defendant charged with this offense may not introduce evidence that he or she was mistaken regarding the child's age, nor is a defendant entitled to a jury instruction regarding the same. A recitation of the facts is in order.

### Facts

The defendant, Alejandro Yanez (Yanez), was eighteen-years-old when he engaged in consensual sexual intercourse with Allison (a fictitious name), the victim in this case, who was thirteen-years-old at the time. The two were first introduced to each other, albeit ever so briefly, in August 1992, nearly a year before this incident. Allison testified that she was attending a Portuguese festival with a girlfriend when she saw her aunt's boyfriend, Victor Yanez (Victor), defendant's brother. According to Allison, who at that time was only twelve-years-old, Victor introduced her to Yanez. For the next eleven months Allison and Yanez had virtually no contact with each other except for the obligatory "Hello" in passing. Then one day in mid-July 1993, while Allison was walking to the local park to meet friends, she saw Yanez cruise by in his white Trans Am convertible with the top down. She testified that she waved to Yanez, who proceeded to turn the Trans Am around and offer her a ride. Since the park was only across the street, Allison declined Yanez's invitation, but when he persisted. Allison acceded. The two briefly talked during the quarter-mile trip. Yanez gave Allison his name and telephone number, and the two conversed again briefly that night on the telephone.

The next day Allison received a telephone message from either her mother or her sister that Yanez had called her and asked that she call him back. Allison returned Yanez's tele-

phone call, and the two made arrangements to meet in the parking lot behind St. Joseph's Church in West Warwick. From the church the two left in Yanez's car and went for a ride. According to Allison, they proceeded to the home of a friend of Yanez's where they engaged in consensual sexual intercourse on the floor in a back bedroom.

Following the conclusion of their first "date" Allison returned home quite late. After entering the house, Allison proceeded directly to the bathroom to shower whereupon she was subsequently confronted by her mother. While in the bathroom, Allison's mother noticed her underwear on the floor and asked if she had engaged in sexual intercourse. Allison initially denied having had sexual intercourse that evening but later admitted the truth. Subsequently Allison's mother contacted the police, whereupon Allison admitted that she had engaged in sexual intercourse but named as her partner a person called Derek. Allison later explained that she had lied about Yanez's identity because she did not want her mother to know that she had engaged in sexual intercourse with Yanez. A subsequent police investigation revealed that Yanez admitted having had sexual intercourse with Allison but insisted that Allison had told him that she was sixteen-years-old. Allison denied having told Yanez that she was sixteen years of age and, in fact, testified that on the two or three occasions when Yanez had inquired about her age, she had responded that she was only thirteen.

Yanez was indicted on one count of first-degree child-molestation sexual assault in violation of G.L.1956 §§ 11–37–8.1 and 11–37–8.2, although the trial testimony would later reveal that this was not an isolated incident and that there were two more equally sordid, uncharged encounters.[1] At trial defense

---

1. Far from the dissent's contention that the uncharged sexual encounters occurred before this charged incident and that Allison and Yanez were actually dating each other, the record simply does not contain this inference. Although we are confident that the record taken in its entirety supports our conclusion that Allison and Yanez were not dating, we nonetheless highlight Allison's testimony to counter the notion that we have misconstrued or ignored the record in this case.

"[Prosecutor]: [Allison], after meeting the defendant, at the Portuguese carnival, did you ever have the occasion to see him again?
"[Allison]: Um, I seen him a couple of times in passing and I think I seen him once at my aunt's house.
"[Prosecutor]: Can you describe how it would come to pass that you would see him in passing?
"[Allison]: Just like either me coming home from school or going down to the basketball court, and he would drive by or something. I would wave 'hi,' that's about it.
"[Prosecutor]: Did you have any conversations with him during that period of time?
"[Allison]: No.
"[Prosecutor]: Well let me ask you this. How long, how many months or how many weeks did it go on that you would see him occasionally and you would wave?
"[Allison]: At least half a year.
\* \* \*
[Testimony relating to the refreshing of Allison's memory concerning the year she first met Yanez is omitted.]
"[Prosecutor]: I believe my last question, [Allison], was how did the relationship progress?

"[Allison]: Um, I was walking down the road going to a park off Wakefield Street to meet my friends, and then we were going to go out. I forget where we were going, but we were going to go out somewhere and I had seen Alex and he stopped and he asked me if I wanted a ride. I told him no, because it was right there, but thanks for asking. He said I'll give you one anyway, and I said sure."
Later, during cross-examination, Allison testified concerning one of her chance encounters with Yanez at her aunt's home.
"[Defense Counsel]: I just have a couple of more questions. At the time you indicated that you met Mr. Yanez at your aunt's house?
"[Allison]: Yes, ma'am.
"[Defense Counsel]: Victor Yanez was present at the home at that time, correct?
"[Allison]: Yes, I'm pretty sure he was.
"[Defense Counsel]: And your aunt was there at that time, correct?
"[Allison]: Yes, ma'am.
"[Defense Counsel]: And they were getting ready to leave?
"[Allison]: Yes, ma'am.
"[Defense Counsel]: And you were going to baby-sit?
"[Allison]: Yes.
"[Defense Counsel]: And Mr. Yanez stopped by to see his brother, do you recall that?
"[Allison]: Yes, ma'am.
"[Defense Counsel]: And there was a brief introduction between the two of you?
"[Allison]: Yes, ma'am.
"[Defense Counsel]: And no conversation took place at that point, correct?
"[Allison]: No.

counsel made numerous attempts to introduce evidence not only demonstrating Yanez's mistaken belief concerning Allison's age but also evidence concerning Allison's apparent maturity in light of her appearance, physical development, and demeanor. The trial justice rejected this evidence and determined that in cases in which conduct is made criminal because the victim is a minor, the defense of ignorance or mistaken belief with respect to the victim's age is not available. The trial justice further indicated that he intended to charge the jury with respect to the unavailability of this defense and consequently declined to charge in accordance with Yanez's requested mistake of fact instructions. The pertinent portion of the trial justice's charge to the jury reads as follows:

"The defendant is accused that on a day and dates between July 14, 1993 and July 15, 1993, at West Warwick, Alejandro Yanez did engage in sexual penetration, to wit sexual intercourse, with [Allison], a person under 14 years of age, in violation of the laws of the State of Rhode Island. Now a person is guilty of first degree child molestation, sexual assault, if he or she engages in sexual penetration with a person 14 years of age or under. Sexual penetration includes sexual intercourse. By law, sexual intercourse is defined as the penetration of the vagina by the penis. There are two essential elements to first degree child molestation sexual assault. First, the defendant must engage in sexual intercourse with the alleged victim. And second, the victim is under the age of 14 years.

"[Defense Counsel]: It was just like a hi, by[e], and that's the end of it?
"[Allison]: Yeah."

Thus we find no support in the record to suggest that Allison and Yanez had any sexual encounter, or for that matter had even had a conversation, until they briefly talked on the day Yanez drove Allison down the street to meet her friends at the park. The next day, July 14, 1993, Allison and Yanez engaged in sexual intercourse on the floor of a back bedroom belonging to one of Yanez's friends. Allison's cross-examination testimony reveals that this incident was the first time she and Yanez had engaged in sexual intercourse.

"[Defense Counsel]: Is it your testimony that on July 14th of 1993, which is the first time—

"Now under the terms of this law, the State need not prove that the act of sexual intercourse was committed against the wishes of the victim. Thus, in order for you to return a verdict of guilty, the State is required to prove, number one, that this defendant, Alejandro Yanez; two, on or about July 15, 1993, at West Warwick; three, did in fact engage in sexual intercourse with [Allison]; and four, that at the time, if you are satisfied he did engage in sexual intercourse with [Allison], at the time she was under the age of 14 years. The law also states when conduct is made criminal because the victim is a minor, and in Rhode Island [in the context of this case] that age being 14, it is no defense that the defendant was ignorant of or mistaken as to the victim's age. And it matters not that his mistaken belief was reasonable."

Following deliberations a Superior Court jury convicted Yanez of first-degree child-molestation sexual assault. The trial justice sentenced Yanez to the minimum twenty year sentence but suspended eighteen years of the sentence with probation. The trial justice also ordered that Yanez have no contact with Allison for twenty years and, as required by law, that Yanez register with the local police authorities as a convicted sex offender. Yanez was released on bail pending the outcome of this appeal.

We note that even though we do not agree with the account of the facts set forth by the dissent—and reiterate that we saw no evidence that Allison and Yanez were actually

"[Allison]: Yes, ma'am.
"[Defense Counsel]:—you allege that you were with my client?
"[Allison]: Yes, ma'am.
"[Defense Counsel]: Is it your testimony that you spoke with Denise * * * on July 14th?
"[Allison]: I think I did speak with her later on that night.
"[Defense Counsel]: That's the night that your mother asked whether or not you had had sex?
"[Allison]: Yes, ma'am."

In regard to the portion cited by the dissent suggesting that the incident at the friend's house was actually the third sexual encounter, we believe that Allison's answer refers to frequency and geography but not chronology.

dating—we are satisfied that even if this version was true, the General Assembly never intended that a charge of statutory-rape should be sorted out by a jury. With this assertion in mind we begin our analysis.

## I

### Mistake of Fact Defense

■ The crime of statutory-rape was legislatively created in England during the thirteenth century in order to afford special protection to those society had deemed too young to appreciate the consequences of their actions. *See* Statute of Westminster I, 3 Edw. 1, c. 13 (1275); 1E. Coke, *The Second Part of the Institute of the Laws of England* 179 (1797). *See also United States v. Ransom*, 942 F.2d 775, 777 (10th Cir.1991); *State v. Jordan*, 528 A.2d 731, 732 n. 4 (R.I.1987). Thus English courts, which had generally recognized the mistake of fact defense in criminal prosecutions since 1638, did not begin to discuss this defense in the context of statutory-rape cases until the later half of the nineteenth century. *See United States v. Brooks*, 841 F.2d 268, 269 (9th Cir.1988). At that time, the mistake of fact defense was rejected by courts both in England and in the United States. *Id.*[2]

Characterizing statutory-rape as a strict-liability offense remained the law in every American jurisdiction until 1964. *See id.* at 270 (observing California as the first state to recognize the mistake of fact defense judicially). *But see People v. Olsen*, 36 Cal.3d 638, 205 Cal.Rptr. 492, 685 P.2d 52, 59 (1984) (rejecting the mistake of fact defense in cases involving lewd and lascivious conduct

with a minor). Although some states have followed California's lead—most through legislative enactments—the majority of courts that have considered this issue continue to reject the reasonable mistake of a victim's age as a defense to statutory-rape and maintain their allegiance to the common law.[3] We note that our research involving statutory-rape cases has revealed that the highest appellate courts of only four states have judicially recognized the mistake of fact defense. *See Garnett v. State*, 332 Md. 571, 632 A.2d 797, 803 (1993). All four of these cases, however, are distinguishable from the case at bar.

The courts in *People v. Hernandez*, 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673 (1964), and *State v. Elton*, 680 P.2d 727 (Utah 1984), both expressly relied upon the text of their respective criminal codes, which required the concurrence of an act and a mental state in order to constitute a crime, as well as language in their codes that unless otherwise provided, ignorance or mistake of fact negates a culpable mental state. Furthermore the *Elton* court relied upon a provision of the Utah Criminal Code, which stated that an offense may be a strict-liability crime only if a statute expressly provides that a mental state is not required. *See Elton*, 680 P.2d at 728. Our General Laws are entirely devoid of any provisions similar to those relied upon in *Hernandez* and *Elton*; therefore, these cases are of no aid to Yanez.

The other two cases in which the mistake of fact defense was judicially recognized are *State v. Guest*, 583 P.2d 836 (Alaska 1978),

---

2. *See also United States v. Ransom*, 942 F.2d 775, 777 (10th Cir.1991); H.R.Rep. No. 99–594, *reprinted in* 1986 U.S.Code Cong. & Admin. News 6186, 6197 ("At common law there was no such defense"); *Recent Cases*, 78 Harv.L.Rev. 1257, 1257 (1965). *But see* Larry W. Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape*, 64 Mich.L.Rev. 105, 110 (1965) ("reasonable mistake of age has never been denied as a defense in an English statutory rape case").

3. *See Ransom*, 942 F.2d at 777; *United States v. Brooks*, 841 F.2d 268, 270 (9th Cir.1988); *State v. Superior Court of Pima County*, 104 Ariz. 440, 454 P.2d 982, 985 (1969); *State v. Stiffler*, 114 Idaho 935, 763 P.2d 308, 310 (App.1988); *Garnett v. State*, 332 Md. 571, 632 A.2d 797, 804

(1993); *People v. Cash*, 419 Mich. 230, 351 N.W.2d 822, 826 (1984); *State v. Searles*, 159 Vt. 525, 621 A.2d 1281, 1283 (1993). *See also* Annotation, *Mistake or Lack of Information as to Victim's Age as Defense to Statutory Rape*, 8 A.L.R.3d 1100 (1966); 3 *Wharton's Criminal Law* § 285 at 69–72 (Torcia 15th ed. 1995) ("It is no defense that the defendant did not know the female's age or reasonably believed her to be of the age of consent"); 65 Am.Jur.2d *Rape* § 36 (1972) ("It is generally held in the absence of statute, that the defendant's knowledge of the age of the female is not an essential element of the crime of statutory rape and therefore it is no defense that the accused reasonably believed that the prosecutrix was of the age of consent").

and *Perez v. State,* 111 N.M. 160, 803 P.2d 249 (1990). In both of these cases, however, the age of the victims (fifteen) closely approached the age of consent (sixteen). *See Guest,* 583 P.2d at 837; *Perez,* 803 P.2d at 250. In addition the court in Perez observed that even though the mistake of fact defense is available if the victim is between the ages of thirteen and sixteen, a defendant is precluded from raising this defense when the victim is under the age of thirteen. *See Perez,* 803 P.2d at 251. *See generally Hernandez,* 39 Cal.Rptr. 361, 393 P.2d at 676 n. 3 (observing that the disallowance of the mistake of fact defense when a girl is of tender years is not illogical, although as the age limits are raised to sixteen and above, this reasoning begins to lose its persuasiveness).

Unlike the circumstances in *Guest* and *Perez* in which the victims were fifteen, however, Allison was only thirteen years of age. Furthermore, our Legislature has drawn distinctions based upon the age of the victim. For example, § 11–37–8.2 provides a minimum penalty of twenty years in prison for the sexual penetration of a person fourteen years of age or younger, while § 11–37–7 prescribes a maximum penalty of five years in prison for the sexual penetration of a person over the age of fourteen but under the age of sixteen, provided that the accused is over the age of eighteen. *Compare* § 11–37–8.2 *with* §§ 11–37–6 and 11–37–7. We therefore conclude that these two cases are also of no help to Yanez.

Notwithstanding this historical perspective Yanez argues that in light of this Court's interpretation of the term "sexual penetration" (the first element of § 11–37–8.1) in cases involving digital penetration, *see State v. Griffith,* 660 A.2d 704 (R.I.1995), and our interpretation of the term "sexual contact" (the first element of § 11–37–4) in cases involving second-degree sexual assault, *see State v. Tobin,* 602 A.2d 528 (R.I.1992), we are constrained to imply a *mens rea* requirement with respect to the age requirement (the second element of § 11–37–8.1) in a charge of first-degree child-molestation sexual assault. We disagree.

## A. Statutory Interpretation

◼ "It is well established that the Legislature may, pursuant to its police powers, define criminal offenses without requiring proof of a specific criminal intent and so provide that the perpetrator proceed at his own peril regardless of his defense of ignorance or an honest mistake of fact." *People v. Cash,* 419 Mich. 230, 351 N.W.2d 822, 826 (1984). *See also Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228, 231 (1957). As the final arbiter on questions of statutory interpretation, we have it as our purpose to establish and to effectuate the Legislature's intent. *See State v. Powers,* 644 A.2d 828, 830 (R.I.1994). "[I]n the absence of an ambiguity, this [C]ourt must give the words of the statute 'their literal and plain meaning.'" *Id.* Against this backdrop we examine our first-degree child-molestation sexual assault statute.

Section 11–37–8.1 provides that:

"[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."

The term "sexual penetration" is defined in § 11–37–1(8) as follows:

" 'Sexual penetration'—sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body, but emission of semen is not required."

Clearly the plain words and meaning of § 11–37–8.1 prohibit the sexual penetration of an underaged person and make no reference to the actor's state of mind, knowledge, or belief. In our opinion this lack of a *mens rea* results not from negligent omission but from legislative design.

Yanez correctly asserts that this Court has previously declared the existence of an implied *mens rea* element with respect to the term "sexual contact" in cases of second-degree sexual assault, *see State v. Tobin,* 602 A.2d 528 (R.I.1992), and to some but not all acts of "sexual penetration" in cases of first-degree child-molestation sexual assault. *See State v. Griffith,* 660 A.2d 704 (R.I.1995).

These opinions represent our determination that conduct that the Legislature has included within the definitions of "sexual contact" or "sexual penetration," other than sexual intercourse, anal intercourse, cunnilingus, or fellatio, may in the absence of a *mens rea* element embrace conduct that is intended for an innocent purpose and not for purposes of sexual arousal or gratification. *See In re Odell,* 672 A.2d 457, 460 (R.I.1996); *State v. Bryant,* 670 A.2d 776, 783 (R.I.1996); *State v. Girouard,* 561 A.2d 882, 889 (R.I.1989).

For instance, in *Bryant* with respect to the count of the indictment charging the defendant with first-degree child-molestation sexual assault for engaging in the digital penetration of the victim, we declared that necessity required "an instruction concerning sexual arousal or gratification in order to preclude the possibility that a defendant could be convicted because of an innocent touching." *Bryant,* 670 A.2d at 783. However, with respect to the count charging penile penetration, we held that this *mens rea* instruction was not necessary because purposeful penile penetration precludes a finding of innocent touching. *Id.* Likewise we have declined to imply such a *mens rea* element to cases that would be considered rape at common law, *see id.,* as well as to cases involving cunnilingus or fellatio. *See Girouard,* 561 A.2d at 889. Thus in most but not all cases of statutory-sexual assault, and except in the most limited instances of child-molestation sexual assault, the "legislative focus is not dependent upon the question of whether the perpetrator at the time of the penetration was sufficiently aroused and gratified." *Bryant,* 670 A.2d at 785 (Bourcier, J., concurring in part and dissenting in part).

However, this debate concerning penetration but not gratification should in no way suggest our willingness to imply an element of *mens rea* with respect to the child's age. We decline to permit a defendant charged with the sexual penetration of a child fourteen years of age or younger to escape responsibility on the basis of the purported consent of the victim or a defendant's mistaken, albeit reasonable, belief that the child was over the age of consent. Our position has both historical and legislative support.

The Rhode Island General Assembly has divided sexual offenses into two main categories—sexual assault and child-molestation sexual assault. An examination of the pertinent provisions reveals that the Legislature has carefully distinguished between the two, explicitly requiring a *mens rea* for sexual assaults that were either unknown at common law or for those acts of sexual abuse that did not involve sexual intercourse, anal intercourse, cunnilingus, or fellatio while electing to maintain the common law's strict-liability for child-molestation sexual assault. For example, the Legislature has defined first-degree sexual assault in these words:

"A person is guilty of first degree sexual assault if he or she engages in sexual penetration with another person, and if any of the following circumstances exist:

"(1) The accused, not being the spouse, *knows or has reason to know* that the victim is mentally incapacitated, mentally disabled, or physically helpless.

\* \* \*

"(4) The accused engages in the medical treatment or examination of the victim *for the purpose of sexual arousal, gratification, or stimulation.*" Section 11–37–2 (Emphases added.)

The definition of second-degree sexual assault contains similar language and also requires that the accused possess a *mens rea.*[4]

---

4. General Laws 1956 § 11–37–4's definition of second-degree sexual assault reads:

"A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist:

"(1) The accused *knows or has reason to know* that the victim is mentally incapacitated, mentally disabled or physically helpless.

\* \* \*

"(3) The accused engages in the medical treatment or examination of the victim *for the purpose of sexual arousal, gratification or stimulation.*" (Emphases added.)

Section 11–37–1(7) defines "sexual contact" as: "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault."

Conversely, when the Legislature drafted the child-molestation sexual assault statutes, it utilized essentially the same language without reference to intent. The clear and unambiguous words of § 11–37–8.1 state that "[a] person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under." Similarly, second-degree child-molestation sexual assault prohibits sexual contact with another person under the age of fourteen, also without regard to the accused's *mens rea*. *See* § 11–37–8.3.

It can be inferred from this statutory classification that the child-molestation sexual assault statutes' silence with regard to a *mens rea* "is designed to subserve the state interest of protecting female children from the severe physical and psychological consequences of engaging in coitus before attaining the age of consent in the statute." [5] *State v. Ware*, 418 A.2d 1, 4 (R.I.1980). *Cf. United States v. Balint*, 258 U.S. 250, 251–52, 42 S.Ct. 301, 302, 66 L.Ed. 604, 605 (1922) ("While the general rule at common law was that the *scienter* was a necessary element in the indictment and proof of every crime * * * there has been a modification of this view in respect to prosecutions under statutes the purpose of which would be obstructed by such a requirement"). Had the Legislature intended not only to punish the act of child-molestation sexual assault but also to require a mental state, the Legislature could easily have provided for such an element. But its decision to include a *mens rea* requirement in the sexual assault statutes while declining to provide a *mens rea* requirement in the child-molestation sexual assault statutes, demonstrates that the Legislature's omission was intentional. This is a sensible and pragmatic objective with which we shall not interfere by engrafting a *mens rea* requirement where one was not intended. *See generally Michael M. v. Superior Court*

*of Sonoma County*, 450 U.S. 464, 471–73, 101 S.Ct. 1200, 1205–06, 67 L.Ed.2d 437, 443–45 (1981) (observing risks attendant to young women engaging in sexual intercourse).

## B. Due–Process Argument

Despite the Legislature's design Yanez nonetheless continues to argue that § 11–37–8.1 contains an implicit element that the accused must have knowledge that the victim is fourteen years of age or younger. Yanez suggests that § 11–37–8.1 violates his due-process rights because he had neither the opportunity to learn Allison's true age nor the opportunity to present a meaningful defense concerning his reasonable mistake. In support of this argument Yanez relies on *Morissette v. United States*, 342 U.S. 246, 252, 72 S.Ct. 240, 244, 96 L.Ed. 288, 294 (1952), in which the Supreme Court observed "that intent was so inherent in the idea of the offense that it required no statutory affirmation," and on *Griffith* in which we relied on *Morissette* and declared that § 11–37–8.1 contains an implicit *mens rea* requirement that a defendant "act with the intent of sexual arousal or gratification" and that this statute "is not a strict liability offense." 660 A.2d at 706.

■ Indeed Yanez correctly states that "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *Tobin*, 602 A.2d at 534 (quoting *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137, 1147 (1951)). In *Morissette* the Supreme Court stated:

> "The contention that any injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation be-

---

5. Unlike first- and second-degree sexual assault, which explicitly contain a *mens rea* requirement, third-degree sexual assault (§ 11–37–6) does not provide for such an element and thus closely parallels the language in the child-molestation sexual assault statutes. The Legislature has defined third-degree sexual assault to provide that "[a] 'person' is guilty of third-degree sexual as-

sault if he or she is over the age of eighteen (18) years and engaged in sexual penetration with another person over the age of fourteen (14) years and under the age of consent, sixteen (16) years of age." Section 11–37–6. In our opinion this language further evinces the Legislature's intent to protect underage children from the consequences of sexual intercourse.

tween some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution." *Morissette*, 342 U.S. at 250–51, 72 S.Ct. at 243, 96 L.Ed. at 293–94.

Despite this well-recognized judicial principle, in order for Yanez to prove that the Legislature's exercise of its power runs afoul of the protections guaranteed by the due-process clause, Yanez must demonstrate that this practice "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Ransom*, 942 F.2d at 777 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). Yanez cannot satisfy this test.

Indeed in nearly the same breath that the Supreme Court proclaimed the "[u]nqualified acceptance" of the doctrine requiring a *mens rea* for every crime, the *Morissette* Court also observed several exceptions to this rule, including "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." [6] *Morissette*, 342 U.S. at 251 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8. Furthermore, "[t]he Supreme Court has never held that an honest mistake as to the age of the prosecutrix is a constitutional defense to statutory rape." *Nelson v. Moriarty*, 484 F.2d 1034, 1035 (1st Cir.1973). *See also Brooks*, 841 F.2d at 270; *State v. Stiffler*, 114 Idaho 935, 763 P.2d 308, 310 (App.1988). We therefore conclude that Yanez's due-process attack is without merit.

In addition we are of the opinion that *Griffith* is distinguishable from the case at bar. Prior to our opinion in *Griffith* we stated that in order to obtain a conviction for first-degree child-molestation sexual assault, the state must prove beyond a reasonable doubt only that (1) the accused engaged in the sexual penetration of the victim and (2) the victim was thirteen (now fourteen) years of age or younger. *See Girouard*, 561 A.2d at 889.

■ In *Griffith*, a case involving digital penetration, as distinguished from sexual intercourse, we addressed the first element of first-degree child-molestation sexual assault codified in § 11–37–8.1, namely, that the accused must engage in the sexual penetration of the victim. 660 A.2d at 705. With respect to this first element we held that first-degree child-molestation sexual assault contained an implied *mens rea* requirement that the accused act for the purposes of sexual arousal or gratification. *See id.* at 706. We further stated that "first-degree child-molestation sexual assault, which carries a minimum twenty-year sentence, is not a strict liability offense." *Id.* Yanez relies on this dictum and invites us to extend the *mens rea* requirement to the second element of the statute. We do not read *Griffith* this broadly, however, since we have subsequently determined that this implied *mens rea* is applicable only in cases that do not involve penile penetration. *See In re Odell*, 672 A.2d at 460; *Bryant*, 670 A.2d at 783. Thus the *mens rea* necessary in cases involving penile penetration is implicit in the intentional doing of the act. Therefore, in the context of this case we emphatically decline Yanez's invitation and hold that the state must prove beyond a reasonable doubt only that Yanez engaged in sexual intercourse with a person who was fourteen years of age or younger. *See Girouard*, 561 A.2d at 889.

The dissent cites *Tobin, Griffith, Bryant*, and *State v. Tevay*, 707 A.2d 700 (R.I.1998), to support the proposition that this Court has previously required a *mens rea* for child-molestation sexual assault crimes and only "now throws itself into reverse gear and

---

6. In a manner similar to our opinion, the dissent also relies on *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) for its analysis concerning *mens rea*. Unfortunately this analysis relies heavily on the general requirement that a *mens rea* accompany every crime, and attempts to distinguish the *Morissette* foot-note where the Supreme Court articulates several exceptions to this general rule including "sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." *Id.* at 251 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8.

starts backpedaling furiously" from our prior precedent. Naturally we disagree.

These cases refer to situations in which we have been required to interpret chapter 37 of title 11 following the 1979 amendment to the sexual assault statutes. At common law the crime of rape consisted of "the act of sexual intercourse committed by a man with a woman not his wife and without her consent, committed when the victim's resistance is overcome by force or fear, or under other prohibited conditions." *State v. Golden*, 430 A.2d 433, 435 (R.I.1981). "In 1979 the General Assembly amended chapter 37 of title 11, which had provided penalties for rape and seduction and substituted for these terms the crime of 'sexual assault.'" *State v. McDonald*, 602 A.2d 923, 926 (R.I.1992). This 1979 amendment broadened the definition of sexual penetration by force to include, in addition to sexual intercourse, the intrusion of any part of a person's body into one's anal or genital cavities. *State v. Babbitt*, 457 A.2d 1049, 1054 (R.I.1983). Likewise, the amended version also created an offense unknown to the common law, second-degree sexual assault, which criminalized "sexual contact," as that term is defined. *See* §§ 11–37–1(7); 11–37–4.

As the dissent points out, over the past years this Court has been required to interpret the meaning of the terms "sexual penetration" and "sexual contact" with respect to the crimes of sexual assault as well as the subsequently enacted offenses of child-molestation. *See Bryant*, 670 A.2d at 783 (interpreting sexual penetration); *Griffith*, 660 A.2d at 706 (extending *Tobin* to sexual penetration); *Tobin*, 602 A.2d at 534 (interpreting sexual contact). However, the common law crime of rape has always been embodied in the first-degree sexual assault statute, *see Babbitt*, 457 A.2d at 1054, and this crime has always been considered a general-intent crime and has never been interpreted by this Court as requiring a *mens rea*. *See Bryant*, 670 A.2d at 783. We have never deviated from the general principle "that purposeful penile penetration precludes a finding of innocent touching." *Id.*

In addition we do not read our recent opinion in *Tevay* so broadly as the dissent does and strongly disagree that *Tevay* "reaffirmed the requirement that the prosecution must prove intentional wrongdoing for the defendant to be guilty of child molestation and specifically endorsed a mistake-of-fact defense." Not only was that question not before us in *Tevay*, but *Tevay* simply does not stand for that proposition.

*Tevay* concerned a challenge to the adequacy of a jury instruction in light of the fact that the defendant presented testimony in which he denied engaging in any inappropriate conduct with his twelve-year-old stepdaughter, even though he did acknowledge being a heavy sleeper who would occasionally pull his wife into bed when she attempted to wake him. 707 A.2d at 701. Tevay then conceded that there was a "'ten percent chance'" that the charged incident (pulling his stepdaughter into bed, touching her buttock, and forcing her to touch his penis) could have occurred without his knowledge. *Id.* The trial justice instructed the jurors that in order to find Tevay guilty of second-degree child-molestation sexual assault, they must find that "Tevay's conduct was intentional and had as its purpose sexual arousal or gratification." *Id.* at 702. The trial justice added that Tevay might not be found guilty "'of conduct which you feel from the evidence, causes you to conclude that the conduct was accidental.'" *Id.* Tevay's request for a mistake of fact instruction was denied, and this Court not only approved the jury instruction as a whole but found no error in the trial justice's refusal to give an instruction on mistake of fact as well. *Id.*

We determined that in the context of the factual scenario as alleged by Tevay, accident and mistake of fact related to the same defense theory, and we therefore concluded that "the jurors were adequately informed that if they had found Tevay's conduct toward [the stepdaughter] was unintentional for any reason, they were to return a verdict of not guilty." *Id.* The only reasons asserted by Tevay in his defense were (1) that he did not commit the crime, (2) that if he did commit the crime it was an accident, and (3) that if he did commit the crime and it was not an accident, the crime was not intended for his sexual arousal or gratification. Our

holding in *Tevay* has no relevance to the case at bar since *Tevay* merely reflects our common sense determination that a touching that is "accidental" cannot have been intended for any reason, including for purposes of sexual arousal or gratification.

In sum a majority of this Court rejects the dissent's reliance on *Tobin, Griffith, Bryant,* and *Tevay* for the proposition that these cases require a *mens rea* with respect to the age of the victim in statutory-rape cases. These cases are not applicable to the age of the victim and relate solely to the perpetrator's intentions in performing the act. We have never had occasion to pass upon the question presented by this case—whether the age requirement attendant to a charge of first-degree child-molestation sexual assault requires a *mens rea*—and we certainly did not specifically endorse the mistake of age defense in *Tevay* since the question before us in that case was the adequacy of the jury instructions relating to intent.

■ The dissent also maintains that since § 11–37–8.1 carries a minimum twenty year prison sentence, this offense is not a strict-liability crime. However, this factor alone is not persuasive since statutory-rape laws frequently involve substantial terms of imprisonment. *See* Miss.Code Ann. § 97–3–65 (1972) ("Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child under the age of fourteen (14) years, upon conviction, *shall be sentenced to death or imprisonment for life* in the State Penitentiary") (emphasis added); *see also Collins v. State,* 691 So.2d 918, 922–23 (Miss.1997) (rejecting the mistake of fact defense). One commentator has succinctly observed:

> "[c]rimes such as rape, assault with intent to rape, carnal knowledge, seduction, and the like, where the offense depends upon the girl's being below a designated age, are punishable if the victim is in fact under the specified age, irrespective of the defendant's belief as to her age, no matter how reasonable his mistake of fact may have been. It is obvious that these offenses are totally unlike the ordinary police offenses involving minor penalties not requiring *mens rea.* Very frequently they involve

substantial terms of imprisonment; and presumably they do require a *mens rea* [unless it relates to the age of the girl]. The reason that mistake of fact as to the girl's age constitutes no defense is, not that these crimes like public welfare offenses require no *mens rea,* but that a contrary result would strip the victims of the protection which the law exists to afford. Public policy requires it. Unless defendants were made to determine at their peril whether or not their victims fall within the class peculiarly needing the protection of the law and thus set apart, there could be no real protection." Francis Bowes Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55, 73–74 (1933).

In addition since Rhode Island's first-degree child-molestation sexual assault statute is by nature a creation of the Legislature, a new provision introducing either a *mens rea* or the defense of reasonable mistake of age should also come into existence from the Legislature and not by judicial fiat. In this case the trial justice in his discretion suspended eighteen years of the minimum twenty year sentence. We conclude that in the circumstances presented by this case, and in the absence of legislative direction, the "better procedure [is] to permit any mitigating and ameliorating evidence in support of a defendant's mistaken belief as to the complainant's age to be considered by the trial judge at the time of sentencing." *People v. Cash,* 419 Mich. 230, 351 N.W.2d 822, 828 (1984).

We note that at the sentencing hearing the trial justice was fully cognizant of Yanez's favorable presentence report, his work history, his expressed remorse, and his supportive family. However, there is no escaping the fact that on their very first "date" following a brief encounter lasting only two or three minutes the previous day, this eighteen-year-old defendant engaged in sexual intercourse on the bedroom floor of his friend's house with this thirteen-year-old girl. The trial justice appropriately observed that there was some measure of planning involved in Yanez's encounters with Allison, which were

aimed at avoiding detection by her mother.[7] The trial justice further noted that the fact that Allison may have been "experienced" for someone her age or that her unfortunate past might have been somewhat unstable or troubled is not a defense. Indeed, the trial justice appropriately concluded that Allison is exactly the type of victim whose vulnerability the Legislature had intended to protect and that an offense perpetrated upon one in her circumstances "is more harmful than one committed upon someone who has a stable environment." Thus, although observing that "it is the public policy of this state * * * that those who engage in sexual intercourse with a person under 14, should be treated harshly," the trial justice nonetheless fashioned a compassionate sentence designed to promote not only rehabilitation but also deterrence. In the words of the trial justice, this sentence is "[n]ot only to deter this young man from committing similar crimes, but to discourage or deter others in the community; to let them know that if they're going to succumb to passion with someone under 14 years of age, there's a very high price to pay." We agree with the trial justice and find no error in his decision.

We recognize that the dissent firmly believes that the General Assembly intended for jurors "to sort out true cases of child molestation from those involving consensual premarital sex between teenagers based upon a mistaken but reasonably held belief that both were old enough to do so legally."[8] We observe, however, the social and policy considerations such a defense would engender in future prosecutions for child-molestation.

First, it would open the door to the introduction of evidence concerning a victim's past sexual conduct, evidence that the General Assembly has already sought to restrict through the enactment of the rape-shield statute. See § 11–37–13. This protection was designed to encourage rape victims to come forward and report crimes; thus we have limited the use of a victim's past sexual history to questions relating to a complaining witness' credibility, see State v. Oliveira, 576 A.2d 111, 113 (R.I.1990); State v. Lemon, 456 A.2d 261, 264 (R.I.1983), and have specifically held that such an inquiry is not relevant to the issue of consent. See State v. Alger, 545 A.2d 504, 507 (R.I.1988). Therefore if a victim, in this case Allison, is to be subject to cross-examination, as the dissent suggests, concerning her "evident sexual experience," as well as her "developed physical appearance, her poise, [and] her association with older teenagers," in order for a defendant to establish his or her reasonable belief that the victim was at least sixteen-years-old, we conclude that such action should come from the Legislature and not from this Court. This is a door best left closed until it is opened, if at all, by those who are better able to debate all the consequences.

Second, we are mindful that were we to adopt a mistake of age defense in cases of child-molestation sexual assault, this defense would be available to all persons charged with engaging in sexual contact with children under the age of fourteen and not only this eighteen-year-old defendant. The availability of this defense would, of course, inevitably lead to the presentation of evidence concerning the issue of consent. In order to avail oneself of the mistake of age defense, the accused, like Yanez in this case, would be required to allege not only that he or she reasonably believed the victim to have been at least sixteen years of age but also that the victim consented to the act. This defense

---

7. During the trial Allison's mother testified concerning the first time Yanez saw Allison. Allison's mother testified that after an evening out with her sister, Victor, and Yanez, a car driven by her sister pulled into her driveway. When Yanez inquired concerning the identities of the two individuals in the window, Allison's mother responded that they were her daughters, who were aged eleven and twelve and that Yanez was "to stay away."

8. We point to § 11–37–6, which provides that one who is over the age of eighteen and engages in sexual penetration with a person over the age of fourteen but under the age of consent, sixteen, is guilty of third-degree sexual assault. This crime carries a maximum penalty of five years imprisonment. This section represents a legislative determination that teenagers who are over the age of fourteen may engage in "exuberant sexual behavior," which is in fact not criminal under our law. The line, however, is drawn at children who are under the age of fourteen.

would result in the prosecution having the burden of proving beyond a reasonable doubt the fact that the victim did not consent to a crime in which the Legislature has decreed that consent is irrelevant.

## II

### Scope of Cross–Examination

■ Yanez's second argument on appeal concerns the trial justice's refusal to allow the defense to cross-examine Allison concerning her false identification of Yanez as the father of her unborn child. Had the defense been permitted to develop this line of inquiry, Yanez claims that Allison's credibility would have been challenged since tests later confirmed (and Allison later admitted during trial) that she had not been made pregnant by Yanez. During a pretrial hearing the state moved in limine to preclude the defense from presenting any evidence suggesting that Allison had given birth to a child, the father of whom was not Yanez. The state maintained that the fact Allison had given birth was simply not relevant to any issue in the case. Yanez maintained that he intended to offer such evidence, not to present evidence of prior sexual conduct, but to impeach Allison's credibility. Specifically Yanez alleged that even though one or more pregnancy tests were performed with negative results subsequent to his encounters with Allison, she nonetheless falsely named Yanez the father. Although Yanez acknowledged that neither element of the offense of first-degree child-molestation sexual assault was in dispute,[9] he maintained that Allison's credibility was at issue because she had allegedly informed him that she was sixteen years of age. We conclude, however, that the trial justice appropriately prohibited the cross-examination of Allison with respect to her having become impregnated by another man after the encounters with Yanez on the ground that the proposed testimony was totally irrelevant.

Yanez relies on *State v. Izzi*, 115 R.I. 487, 490, 348 A.2d 371, 372 (1975), in which we stated that since sex-offense cases involving minors often turn on the credibility of one party or the other, evidence of prior false charges by one of the parties is relevant to the ultimate question of guilt or innocence. In this case, however, Allison's credibility with respect to the essential elements of the offense was not in issue. Testimony concerning the false accusations about Yanez may have become relevant only if the mistake of fact defense was available to this defendant. It is not. Accordingly, evidence that Allison may have told others that she was impregnated by Yanez was simply not relevant to this offense. Since we have determined that the only relevant inquiry was whether (1) Yanez engaged in sexual intercourse with Allison and (2) Allison was fourteen years of age or less, evidence pertaining to Allison's prior inconsistent statements about the father of her unborn child was properly excluded by the trial justice both on the grounds of relevance and in light of the balancing test required by Rule 403 of the Rhode Island Rules of Evidence.

### Conclusion

For the reasons articulated, we deny the defendant's appeal and affirm the judgment of conviction. The papers in this case are hereby remanded to the Superior Court.

Flanders, Justice, dissenting.

I respectfully dissent. I cannot believe that the Legislature intended that G.L.1956 § 11–37–8.1 (Rhode Island's statutory-rape law)—carrying a mandatory-minimum sentence of twenty years in jail—should be construed by the Judiciary to bar an accused teenager's reasonable mistake-of-age defense to charges based upon his engaging in consensual sexual acts with his teenaged girlfriend. The unavoidable result of such a draconian interpretation of this law is the imposition on this defendant, Alejandro Yanez (Alex)—a young man who was barely eighteen years old at the time of this incident—of an uncommonly brutal, harsh, and

---

9. At the outset of the criminal investigation in this case Yanez voluntarily gave police a written statement wherein he admitted having engaged in sexual intercourse on one occasion with Alli-

son but maintained that Allison had informed him that she was sixteen years of age. This statement was admitted into evidence without objection.

undeserved punishment that is so out of whack with reality that it is virtually without parallel in any jurisdiction of the United States.[10]

If any legislative intent is apparent in the language used in § 11–37–8.1 to criminalize sex with children, it is the intent manifest in its title to outlaw sexual abuse of children by adults and to punish severely those who commit such "child molestation." But there is a world of difference between a crime involving intentional child molestation and a situation like this one in which two teenage lovers engage in a fully consensual act (or acts) of sexual intercourse in the mistaken belief on the part of one of them that they are both of a legal age to do so. Although their exuberant sexual behavior may be sniffed at by a tongue-clucking majority as "sordid," it is certainly not "child molestation" within the meaning of Rhode Island's statutory-rape law.[11] Any criminal statute that carries a mandatory twenty-year jail sentence and imposes a lifelong stigma as a sexual predator

on any violator should be rationally interpreted to draw a distinction between these two very different scenarios—especially when, as here, the sexual conduct in question would have been unquestionably legal if Alex's sexual partner had been sixteen years old, as she allegedly said she was.

In this case, two versions of what happened vie for acceptance. According to the defense, Alex, an eighteen-year-old (who was only six months too old for participation in our juvenile court system), had been dating a mature-looking young woman whom he had met several times previously and who phoned him and asked him to go out on that fateful evening.[12] Alex claims that the young woman told him she was sixteen when (unbeknownst to him) she was really a month and a half shy of her fourteenth birthday. Her deceit was made more credible. Alex contends, by her mature and developed physical appearance, her poise, her association with older teenagers, and her evident sexual experience.[13] The defense was prepared to pro-

**10.** Although Alex received the minimum twenty-year sentence after the trial justice refused to consider his mistake-of-age defense, the trial justice ordered him to serve the first two years of his sentence in prison and suspended the remaining eighteen years while placing Alex on probation for this period. Thus, even after Alex finishes serving his prison sentence, he will be subject to re-imprisonment for up to eighteen years if he fails to keep the peace or engages in any other conduct that causes a hearing justice to be reasonably satisfied that he has violated the terms of his probation. Moreover, he will be required to register as a convicted sex offender and will be forever stigmatized as a convicted felon and child molester. Accordingly, in the circumstances of this case I disagree with the majority's conclusion that this outcome represents "a compassionate sentence."

**11.** The uncharged sexual conduct alluded to by the majority relates to testimony by Allison that she and Alex had engaged in sexual activity on other occasions, apparently *before* the charged incident occurred at the house of Alex's friend. *See infra.* Thus, far from painting a picture of a "sordid" one-time tryst on the floor of a dingy back room, the evidence indicated that Allison and Alex had been dating each other and that the sexual activity that grew out of their relationship was no more sordid than any other case of premarital, teenage sex. Indeed, the trial justice himself noted at the sentencing hearing that the consensual sexual encounter for which Alex was charged was not a one-time affair: "[O]n the

second date they're having sexual intercourse. Apparently times have changed."

**12.** The majority claims that there was "no evidence that Allison and Yanez were actually dating." No evidence they were actually dating? Allison candidly informed the trial court that they went out together on multiple occasions beyond the one charged incident. Although she gave an affirmative response to the cross-examination question "Is it your testimony that on July 14th of 1993, which is the first time you alleged that you were with my client?," Alex's girlfriend also testified as follows:

"**Allison:** Yes, ma'am. I had had relations with Alex on three occasions.
"**Defense Counsel:** So it's three occasions?
"**Allison:** Yes, ma'am.
"**Defense Counsel:** When was the third occasion?
"**Allison:** *It was once when we had went out and it was over by a sand dune, and then the second time it was at his house, and then at his friend's house.*" (Emphasis added.)

To be sure, the prom and the malt shop were not apparently included in their whirlwind courtship, but the above excerpt from the record not only refutes the majority's contention that they were never "actually dating," but also suggests that the uncharged sexual conduct between them occurred *before* the charged incident at the house of Alex's friend.

**13.** Indeed, by the time of Alex's trial Allison had become pregnant by a different boyfriend, a con-

duce witnesses to corroborate the reasonableness of Alex's being taken in by these misrepresentations but the trial justice barred him from doing so. In any event, there is no dispute that Alex and his date engaged in fully consensual sexual relations with each other.[14] The prosecution, on the other hand, paints Alex as a fully accountable eighteen-year-old adult who, after having been warned that the young woman was not old enough to be seeing him, nonetheless proceeded to take advantage of her, knowing full well that the allure of his relative sophistication—together with his ownership of a car and access to a friend's apartment—would work its magic on an impressionable thirteen-year-old. But because the trial justice prevented Alex from introducing any evidence concerning the reasonableness of his mistaken belief that his teenage girlfriend was of legal age to engage in consensual sex, the jury never got to hear any of this testimony.

I would hold that in this type of situation the General Assembly intended that a jury—not judges or prosecutors—is the appropriate body to sort out true cases of child molestation from those involving consensual premarital sex between teenagers based upon a mistaken but reasonably held belief that both were old enough to do so legally. To this end, a criminal defendant indicted under § 11–37–8.1 should be afforded the opportunity to defend against such charges by showing a reasonable and good-faith mistake concerning the age of his or her consenting sexual partner.

I am both surprised and disappointed that a majority of this Court believes otherwise and thinks that Rhode Island's statutory-rape law must be interpreted as a strict-liability crime when it comes to the age of the accused's sexual partner. I say this because this Court has recently stated unequivocally in *State v. Griffith*, 660 A.2d 704, 706 (R.I.1995), a case interpreting this same statute, that first-degree child-molestation sexual assault proscribed by § 11–37–8.1 "*is not a strict liability offense.*" (Emphasis added.) The *Griffith* Court based this conclusion on its recognition that "[t]he existence of a *mens rea* is the rule, rather than the exception under our jurisprudence, a principle 'so deeply rooted in American law.'" 660 A.2d at 706 (citing *State v. Tobin*, 602 A.2d 528, 534 (R.I.1992), and *Morissette v.. United States*, 342 U.S. 246, 252, 72 S.Ct. 240, 244, 96 L.Ed. 288, 294 (1952) (Jackson, J.)). And even more recently in *State v. Bryant*, 670 A.2d 776, 783 (R.I.1996), we reaffirmed that Rhode Island's statutory-rape law drew upon common-law tradition requiring at least a generally guilty mind.

Most recently—indeed during this very term—this Court reaffirmed the necessity of proving criminal intent for a defendant to be guilty of child molestation in *State v. Tevay*, 707 A.2d 700 (R.I.1998) (per curiam). There the defendant claimed a mistake-of-fact defense, arguing that he had believed the person with whom he had sexual contact was his

---

dition which she initially and falsely blamed on Alex in order to conceal her sexual activity from her family.

**14.** The majority claims that allowing a defendant accused of statutory rape to present evidence relating to a reasonable mistake concerning the other person's age would "open the door to the introduction of evidence concerning a victim's past sexual conduct" contrary to G.L.1956 § 11–37–13 and to Rule 412 of the Rhode Island Rules of Evidence. First, as the majority concedes, neither § 11–37–13 nor Rule 412 bars the introduction of evidence of a complainant's sexual history. Rather the rules merely restrict its admissibility, and properly so, to relevant topics such as the complaining witness's credibility. Here, had a mistake-of-age defense been allowed, the credibility of Allison's testimony that she told Alex that she was only thirteen years old would have been an important trial issue. While Alex should not be allowed to besmirch Allison's reputation by introducing irrelevant evidence of her sexual history, the jury should have been allowed to learn that Allison initially blamed her later pregnancy on Alex, an allegation that she knew to be false at the time she made it. Such evidence would certainly tend to show animosity or bias toward Alex and would call into question her credibility as well as the veracity of her critical testimony that she supposedly informed Alex of her true age. Furthermore, no other evidence of Allison's sexual history would be admissible unless Alex could show that he knew of these other sexual experiences and that he relied upon that knowledge in concluding that Allison was in fact the sixteen-year-old that she allegedly represented herself to be. Thus, the specter raised by the majority of "open[ing] the door" to inadmissible evidence is unfounded.

wife and not his underaged twelve-year-old stepdaughter. The criminal defendant appealed his conviction on one count of second-degree child molestation, arguing that the trial justice's instruction to the jury that "they must find Tevay's conduct intentional beyond a reasonable doubt and not as a result of an accident" did not adequately convey a mistake-of-fact defense. *Id.* at 702. This Court affirmed the conviction, holding that the trial justice had indeed properly instructed the jury because

> "both accident and mistake-of-fact in the context of this case relate to the same defense theory. In other words the accident was the mistaken belief that [the stepdaughter] was Tevay's wife. Therefore, we conclude the jurors were adequately informed that if they had found Tevay's conduct toward [the stepdaughter] was unintentional, *for any reason,* they were to return a verdict of not guilty." *Id.* (Emphasis added.)

Thus in *Tevay* we reaffirmed the requirement that the prosecution must prove intentional wrongdoing for the defendant to be guilty of child molestation and specifically endorsed a mistake-of-fact defense by approving a jury instruction that would excuse a defendant's conduct if it was based on a mistake of identity or "was unintentional, for any reason." *Id.* Moreover, *Tevay* emphasized that if an accused's sexual conduct with a minor was indeed based on a reasonable mistake of fact, the jury was required to return a not-guilty verdict—notwithstanding the undeniable fact that the defendant's sexual contact with a twelve-year-old girl in that case was admittedly for the purpose of his sexual arousal or gratification.[15]

The majority attempts to dismiss *Tevay* by contending that "[o]ur holding in *Tevay* has no relevance to the case at bar since *Tevay* merely reflects our common sense determination that a touching that is 'accidental' cannot have been intended for any reason, including for purposes of sexual arousal or gratification." First, this so-called "holding"

appears nowhere in *Tevay.* Second, even the defense counsel in that case did not have the audacity to suggest that when the defendant "grabbed Jody [his twelve-year-old stepdaughter], pulled her into his bed, touched her buttock, and forced Jody to touch his penis," 707 A.2d at 701, it was not for the purpose of the defendant's sexual gratification. On the contrary, the holding of *Tevay* was quite simply that the trial justice's use of the word "accident" rather than "mistake" was adequate to instruct the jury on the defendant's mistake-of-fact defense—to wit, that the defendant, while groggy after having just emerged from a deep sleep, mistook his twelve-year-old stepdaughter for his wife. *Id.* at 702. In the very words of the Court: "Although the trial justice denied Tevay's request to instruct on mistake-of-fact, we are of the opinion that both accident and mistake-of-fact in the context of this case relate to the same defense theory. *In other words the accident was the mistaken belief that Jody was Tevay's wife."* *Id.* (Emphasis added.) Although the jury may have scoffed at such a far-fetched defense under the facts of that case, *Tevay* stands for the proposition that a criminal defendant charged with sexually assaulting a minor nonetheless is entitled to offer such a "mistaken belief" defense. Thus *Tevay* is irreconcilable with the majority's current stance, and its ineffectual attempt to distinguish this case serves only to underscore its unjustified departure from the Court's prior rulings that § 11–37–8.1 is not a strict-liability offense.

I note also that other courts have declined to draw a distinction between mistake-of-age and mistake-of-identity defenses. Massachusetts, which as noted below has imposed strict liability in its child-rape laws under the legislative-reenactment theory, addressed a *Tevay*-type situation in the case of *Commonwealth v. Knap,* 412 Mass. 712, 592 N.E.2d 747 (1992). There, the Supreme Judicial Court rejected an asserted mistake-of-identity defense in adherence to its prior holdings that mistake of *age* is not a defense to statutory rape. *Id.* 592 N.E.2d at 749 (citing

---

15. Tevay's purported "innocent purpose" was not that he had a nonsexual motive when he engaged in the challenged conduct but that his sexual behavior was perfectly legal if his perception of the facts had been accurate; that is, that he had been engaging in sexual activity with a person who could lawfully consent to such acts.

*Commonwealth v. Miller*, 385 Mass. 521, 432 N.E.2d 463 (1982)). Thus whatever else may be said about the wisdom of its position, Massachusetts at least exhibits the virtue of consistency. But in Rhode Island a defendant accused of child-molestation sexual assault may present a defense under *Tevay* that he or she was mistaken about the identity of the minor child (because he or she had a reasonable belief that the child was in fact a different, older person) but not about the minor child's age.

Notwithstanding *Tobin, Griffith, Bryant,* and *Tevay,* the majority now throws itself into reverse gear and starts backpedaling furiously to distance itself from what the Court has said in these cases. Despite the Court's previous unequivocal statements that child molestation is not a strict-liability offense and that accident and mistake of fact constitute a defense to this type of crime, now we are told that statutory rape is indeed a strict-liability offense when it comes to the age of the defendant's consenting sexual partner. As a result, the child-molestation statutes have been scrambled into a proverbial hash of conflicting intent requirements, mandating proof of intentional wrongdoing for all elements except one: the age of the victim. For the first time the Court opens a black hole of strict liability under these laws and withdraws the *mens rea* safety net previously included as part of the required scaffolding for all other elements of these crimes. This decision not only flies in the face of what this Court has stated on every prior occasion when it has interpreted this statute but it also spurns one of the most fundamental principles of the criminal law.

The essence of our system of criminal justice, familiar to any first-year law student, is the venerable principle that *actus non facit reum, nisi mens sit rea;* or in other words, a criminal act flows only from the "concurrence of an evil-meaning mind with an evil-doing hand." *Morissette,* 342 U.S. at 251, 72 S.Ct. at 244, 96 L.Ed. at 294 (refusing to extend strict liability to federal conversion law); 1 *Wharton's Criminal Law* § 23, at 100 (Torcia 14th ed.1978). Because the element of intent is an essential predicate to culpability, and therefore to criminal liability, the common law has long recognized that a reasonable mistake of a fact essential to the commission of a crime can negate the requisite evil intent required to be held guilty of a particular offense. *See generally* W. LaFave and A. Scott, Jr., *Criminal Law* § 5.1 (2d ed.1986).

"In actuality, the basic rule is extremely simple: ignorance or mistake of fact * * * is a defense when it negatives the existence of a mental state essential to the crime charged. Indeed, it is so simple because * * * it is merely a restatement in somewhat different form of one of the basic premises of the criminal law. Instead of speaking of ignorance or mistake of fact or law as a defense, it would be just as easy to note simply that the defendant cannot be convicted when it is shown that he does not have the mental state required by law for commission of that particular offense. * * * Yet, the practice has developed of dealing with such mistakes as a matter of defense, perhaps because the facts showing their existence are usually brought out by the defendant." *Id.,* § 5.1 at 406.

Thus the same act can be a crime or an innocent act, mistake or accident, depending on the intention of the actor. In the words of the United States Supreme Court:

"The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. * * * Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a 'vicious will.' " *Morissette,* 342 U.S. at 250–51, 72 S.Ct. at 243–44, 96 L.Ed. at 293–94.

Blackstone himself wrote:

"And, as a vicious will without a vicious act is no civil crime, so, on the other hand, an unwarrantable act without a vicious will is no crime at all. So that, to constitute a crime against human laws, there must be,

first, a vicious will; and, secondly, an unlawful act consequent upon such vicious will.

\* \* \*

"*Ignorance or mistake is another defect of will, when a man, intending to do a lawful act, does that which is unlawful. For here the deed and the will acting separately, there is not that conjunction between them, which is necessary to form a criminal act.*" 4 W. Blackstone, *Commentaries on the Laws of England* \*21, \*27 (1769). (Emphasis added.)

Or, to recall the more homey aphorism of Mr. Justice Holmes, "[e]ven a dog distinguishes between being stumbled over and being kicked." O.W. Holmes, *The Common Law* 3 (Dover ed.1991).

It is true that over the last century and a half, many American jurisdictions have adopted so-called statutory-rape laws. And many of these statutes, like Rhode Island's, set out only two express elements—sexual penetration and age—and say nothing about a required mental state.[16] This omission is not dispositive, however. Because "intent [is] so inherent in the idea of the [criminal] offense that it require[s] no statutory affirmation," *Morissette*, 342 U.S. at 252, 72 S.Ct. at 244, 96 L.Ed. at 294, most criminal statutes do not specify the mental state required

for the forbidden acts to constitute a crime. Rather the common-law tradition mandates that the forbidden acts must be the result of intentional wrongdoing.[17]

Notwithstanding that this long and venerable common-law tradition insists upon intentional misconduct for criminal offenses being proven, it has been widely argued with respect to statutory rape laws that legislative silence concerning the requisite intent means that "the defendant is bound to know at his peril the prosecutrix' age." F. Lee Bailey and H. Rothblatt, *Crimes of Violence: Rape and Other Sex Crimes* § 461, at 299 (1973), *see also* 1 *Wharton's Criminal Law* § 76; 2 Model Penal Code § 213.6 cmt. 2 (1962) (noting "[a]t one time, this rule obtained in virtually every American jurisdiction" for rape and other related sex offenses). And although some states continue to impose such a strict-liability construction upon their statutory-rape laws, others do not. Indeed in those bailiwicks where strict liability continues to reign, no convincing argument has been put forth to reconcile this harsh rule with the normative *mens rea* principles surveyed in *Morissette*. Nevertheless, whatever the state of the law in other jurisdictions, with respect to Rhode Island's statutory-rape law three points are noteworthy.

16. The common law forbade carnal knowledge of a girl under the age of ten without regard to her consent, "as by reason of her tender years she is incapable of judgment and discretion." 4 W. Blackstone, *Commentaries on the Laws of England* \*212 (1769). Thus the common law was strict with regard to the element of consent. But even Blackstone says nothing about whether a reasonable mistake of age would effectively negate this felony.

17. The majority faults the dissent's reliance on the fundamental criminal-law principles set forth in *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), suggesting that the United States Supreme Court has placed its imprimatur on strict liability in the statutory-rape context. But far from endorsing an exception to the general requirement of a "vicious will" in statutory-rape cases, the Supreme Court in dicta simply noted—in a passage describing the historical development of the law—that "[c]ommon-law commentators of the Nineteenth Century early pronounced the same principle, although a few exceptions not relevant to our present problem came to be recognized." *Id.* at 251, 72 S.Ct. at 244, 96 L.Ed. at 294. (Footnotes

omitted). The Court continued in a footnote, "[e]xceptions came to include sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached age of consent." *Id.* at 251 n. 8, 72 S.Ct. at 244 n. 8, 96 L.Ed. at 294 n. 8. Thus the Supreme Court merely acknowledged, as I do, that many states came to recognize an exception to the common-law rule of *mens rea* with respect to a mistake-of-age defense in sex-offense prosecutions. The Court never ventured to opine whether the imposition of strict liability in such cases was proper, principled, or constitutional. As I discuss *infra*, twenty-three states now recognize some form of the mistake-of-age defense in this type of prosecution. Moreover, I would also note that in relying upon these passages from *Morissette* to show why § 11–37–8.1 is not a strict-liability statute, I am hardly plowing new ground. Rather this Court has already harvested the fundamental *mens rea* principles sown by *Morissette* in such previous child-molestation and sexual-assault cases as *Griffith, Tobin, Tevay,* and *Bryant.*

## I

## Rhode Island Law

First and foremost, until today Rhode Island had never joined the strict-liability fold for statutory-rape crimes. Our earlier colonial laws simply echoed the common law received from England. For example, a statute passed by the first General Assembly in 1647 read:

> "Rape is forbidden by this present Assembly throughout the whole colony * * * like hereunto is the knowing of a maid carnally who is under the age of ten years, though it be with her consent. The penalty we do declare felony of death. See for confirmation 13 Ed. 1, 34." Acts and Orders of the First General Assembly, *reprinted in* J. Cushing, *The Earliest Acts and Laws of the Colony of Rhode Island and Providence Plantations: 1647–1719*, at 26 (1977) (J. Cushing).

A compilation of Rhode Island colonial laws in 1705 included this decree whose essential age term is lost to history: "Rape. *This Assembly* strictly Forbid the Same & we doe hereby declare that it is when a man through his wild & unbridled affection * * * Forceth A woman against her will like unto him the Knowing a maid Carnally who is under the [lost text] age o Years though it b Her Consent." Laws and Acts of Rhode Island and Providence Plantations of 1663, at 11–12, *reprinted in* J. Cushing at 65. *See also* Acts and Laws of His Majesties Colony of Rhode Island and Providence Plantations in America of 1662, at 6, *reprinted in* J. Cushing at 142 (penalty for rape is death). In later compilations of the Public Laws in

1798, 1822, 1844, 1857, 1872, and 1882, penalties for rape are specified but no articulation of the elements of the offense of rape is set out, nor is child rape mentioned separately.[18]

The approximate precursor to today's law, G.L.1956 § 11–37–2, was passed in 1889 and, as originally phrased, essentially restated the early colonial statutes (which had in turn echoed the English common-law prohibition of carnal knowledge of a girl) but raised the threshold age from ten to fourteen years of age. *See* P.L.1889, ch. 738, § 1. The statute was amended five years later to increase the critical age to sixteen and the law thereafter remained substantially unchanged until 1979.[19]

Surprisingly until *Tevay* not one reported Rhode Island case in the nearly one hundred intervening years specifically addressed whether a defendant could raise mistake of fact as a valid defense to such a ·charge. From this conspicuous lacuna in our state's jurisprudence, we might as easily infer that no defendant in Rhode Island has ever been refused this defense as that defendants have never been allowed to raise it.[20] At the very least one might infer that the large measure of judicial discretion written into former § 11–37–2's fifteen-year *maximum* sentence was sufficient to respond to any mitigating circumstances when and if they arose in particular cases. And though, as noted, even the nonforcible rape of a child was a felony punishable by death under the puritanical standards of our colonial forebears—a sanction that was equally applied to burglary, blasphemy, or witchcraft—few would argue for the propriety of this penalty today in

---

**18.** As with most felonies in colonial America, the penalty for both forcible rape and rape of a child under ten was death by hanging. *See* Act to Reform the Penal Laws § 6, Public Laws of the State of Rhode Island ˙and Providence Plantations 585 (Jan.1798) ("*And be it further enacted,* That every person who shall be convicted of the crime of rape, or of being accessory thereto before the fact, shall suffer death"); Act to Reform the Penal Laws § 3, Public Laws of the State of Rhode Island and Providence Plantations 339 (Jan. 1822). However, by 1844 the penalty for this offense was amended to imprisonment "for life, or for any term not less than ten years." An Act Concerning Crimes and Punishments § 13, Public Laws of the State of Rhode Island and Providence Plantations 380 (Jan.

1844). This penalty remained constant through the 1857 and 1882 compilations of our laws. *See* Revised Statutes of 1857, ch. 212, § 4, at 530; Pub.Stat. of 1882, ch. 240, § 5, at 667.

**19.** Former § 11–37–2, compiled as G.L.1896, ch. 281, § 3, read: "Whoever shall unlawfully and carnally know and abuse any girl under the age of sixteen years shall be imprisoned not exceeding fifteen years." *See also* P.L.1894, ch. 1270, § 1; *State v. Ware*, 418 A.2d 1, 2 (R.I.1980) (tracing history of sexual-offense laws).

**20.** Indeed *Tevay* would seem to confirm this inference.

situations like the case at bar. *See* J. Cushing, at 26; *cf.* 2 Model Penal Code § 213.6 cmt. 2, at 415 (arguing that, whatever the justification of the penalty at common law, "the traditional disallowance of mistake in the law of statutory rape has been rendered intolerable by legislative extension of the age of consent"). Certainly the reworking of the rigid ten-year minimum penalty for general rape set out in the 1882 statute, *see* Pub.Stat. 1882 § 30–240–5, into a fifteen-year maximum discretionary sentencing range applicable to underage sexual intercourse in 1894, *see* P.L.1894, ch. 1270, § 1, suggests that the Legislature recognized the need for a more flexible treatment of statutory rape than was necessary with common-law rape. *Compare* G.L.1896 § 30–281–3 (statutory rape) *with* G.L.1896 § 30–277–5 (general rape).[21]

Regardless of Rhode Island's judicial silence on the mistake-of-age defense before 1979, the General Assembly in that year discarded its nineteenth-century rape and seduction laws in favor of an entirely revamped and integrated sex offense chapter defining sexual assault in its myriad aspects. *See* P.L.1979, ch. 302, §§ 1, 2.[22] Unfortunately the Legislature provided very little specific guidance for interpretation of these provisions and no express indication concerning whether it intended to preserve or abrogate whatever it considered to be the existing common or statutory law in this state.[23] But it is significant that in 1984, § 11–37–8.1 was

carved out of the general rape provision—an offense that has always required at least a general criminal intent to convict. *See* P.L. 1984, ch. 59, § 2; *Bryant*, 670 A.2d at 783; *State v. Jordan*, 528 A.2d 731, 733 (R.I.1987) (detailing legislative history).

The majority makes much of the fact that the General Assembly has included the phrase "knows or has reason to know" in the adult sexual-assault laws, *see* §§ 11–37–2(1) and 11–37–4(1), which it has not included in its child-molestation laws. It claims that the Legislature's failure to use similar language in the child-molestation statutes shows that the omission was intentional and that, therefore, the courts should "not interfere by engrafting a *mens rea* requirement where one was not intended." The problem with this conclusion, as demonstrated above, is that this Court has previously rejected such an analysis. In *Griffith* we said that the statutory-rape law was not a strict-liability statute despite language that seemingly provided for no scienter element. 660 A.2d at 706. In *Tobin* we held that second-degree sexual assault was not a strict-liability offense because the accidental sexual touching of a minor child would be a defense to such a charge. 602 A.2d at 535. And in *Tevay* we held that the trial justice properly instructed the jury on a defendant's mistake-of-fact defense in a prosecution under the second-degree child-molestation statute. 707 A.2d at 702. Thus I am at a loss to understand how the majori-

---

21. Admittedly our close sister jurisdiction, Massachusetts, has refused the defense judicially from as early as 1896. *See Commonwealth v. Murphy*, 165 Mass. 66, 42 N.E. 504, 505 (1896) (defense refused in prosecution for assault with intent to rape because the defendant's intended fornication provided the *malus animus* ); *Commonwealth v. Moore*, 359 Mass. 509, 269 N.E.2d 636, 639 (1971) (citing *Murphy* for "the longstanding interpretation" that defendant may not raise mistake of age as defense to rape of a child); *Commonwealth v. Miller*, 385 Mass. 521, 432 N.E.2d 463, 465 (1982) (holding that legislative reenactment adopted prior judicial rejection of mistake-of-fact defense); Mass.Gen.Laws ch. 265, § 23 (1998) (rape of child punishable by minimum of five years imprisonment). But our good neighbor Connecticut goes the other way, expressly allowing a mistake-of-age defense. *See* note 34, *infra*. Whether Rhode Island's Judiciary would have followed Massachusetts or Connecticut if the proper case had been presented during the pre–1979 era is pure speculation.

But in the absence of any unambiguous statutory answer one way or the other, we should assume that the common law's insistence on a *mens rea* requirement prevails unless and until it has been expressly modified by statute.

22. The new statute so thoroughly rewrote the law on rape and sexual assault that this Court was constrained to apply the rule of abatement to dismiss charges against a defendant who had been accused under the old law of committing fellatio with a thirteen-year-old boy. *See State v. Souza*, 456 A.2d 775, 780 (R.I.1983).

23. The legislative council explanation accompanying 79–H 5408 provided the barebones comment: "This act would repeal existing laws relating to sexual offenses and provides for a sexual assault chapter of the general law defining various sexual offenses, and further delineating admissible evidence and providing for penalties upon conviction."

ty can now claim that the Legislature's failure to include specific *mens rea* language in § 11–37–8.1 means that intentional wrongdoing is not required for a defendant to be guilty of transgressing the statute's underage requirement.

Additionally the majority's premise is unsound. The Legislature's use of the phrase "knows or has reason to know" in the adult sexual-assault statutes is limited only to cases in which a consent defense is unavailable to a defendant because the victim was mentally incapacitated, mentally disabled, or physically helpless at the time of the sexual contact. Because there is no similar consent defense available to child-molestation charges, the General Assembly had no occasion or warrant to use this same language in the statutes dealing with child molestation. Moreover, in all the cases involving adult rape or second-degree sexual assault in which the victim is not mentally or physically helpless, the prosecution still has to prove *mens rea* with regard to the remaining elements of the offense despite the complete absence of any statutory language requiring such proof. If the majority's reasoning were correct, then the Legislature's failure to include the same knows-or-has-reason-to-know language with respect to all other types of rape and sexual-assault cases would convert these crimes to strict-liability offenses as well. But here too we have already held otherwise.

The majority also overlooks the most obvious reason for the General Assembly's decision to include the knows-or-has-reason-to-know language with respect to mentally deficient victims for sexual-assault crimes that already include an implicit *mens rea* requirement. In cases involving a defendant accused of having illicit sex with a mentally deficient person, the mental deficiency, disability, or physical helplessness may not be an objectively verifiable condition discernible by the accused defendant. Such conditions may be subtle or ascertainable only to a professional who knows how to test and measure for such disabilities. In contrast, the age of a person is an objectively verifiable fact. The Legislature may well have concluded that in the former type of situation

special language should be inserted into the sexual-assault statutes to clarify that more than mere intentional sex with a person of limited mental or physical capacity would be needed to convict someone of this crime.

In sum the fact that the Legislature has chosen to take special precautions by inserting explicit *mens rea* language for a small subset of certain adult sex crimes in which the victim's disabled status may not be objectively ascertainable should not be interpreted to mean that it is negating *mens rea* in all other sex-crime contexts. To me all this indicates is that the Legislature has taken special care in this one extraordinary situation to make sure that defendants are not convicted of such crimes unless they are guilty of the same kind of intentional wrongdoing that is required to convict in all other sex-crime situations.

In any event, lacking any explicit clues to legislative intent on this particular issue, either textual or extratextual, I believe that the common-law rule of lenity militates in favor of a statutory construction that is favorable to the accused and counsels this Court to adopt "the less harsh of two possible meanings." *See Jordan*, 528 A.2d at 735 (holding that "[i]t is well settled" that the rule of lenity must be applied to § 11–37–8.1). As this Court said in *State v. Foster*, 22 R.I. 163, 167, 46 A. 833, 834 (1900).

> "We do not lose sight of the rule that penal statutes are to receive a strict interpretation, and that the general words thereof should be restrained for the benefit of him against whom the penalty is inflicted (Potter's Dwarris on Stat.245); [except] when the intention of the legislature is obvious and the language plain, no room is left for judicial refinement or construction."

Here not only an ambiguity but the complete absence of statutory language addressing a requirement typically infused by the common law into every criminal offense weighs in favor of applying the rule of lenity to this case. Moreover, our broadly phrased holding in *Griffith* that § 11–37–8.1 does not impose strict liability, coupled with our recent statements in *Tevay* recognizing that unintentional sexual contact with a child is a

defense to a child-molestation charge, adds the force of settled law to the momentum created by our previous application of the rule of lenity to this crime.

Accordingly I do not believe it is necessary to reach the constitutional due-process issues raised by defendant. I simply cannot accept that the Legislature intended *sub silentio* to negate a reasonable mistake-of-age defense that would cashier the *mens rea* that is essential to all criminal offenses of this type unless it has been expressly eliminated. I *would note only that the judicial creation of strict liability for a statutory rape offense without any advance notice of such a crime raises serious due-process problems that can and should be avoided by allowing a mistake-of-age defense. See State v. Fremgen,* 889 P.2d 1083, 1084–85 (Alaska Ct.App.1995) (holding refusal of mistake-of-age defense violative of state constitution's due-process clause).

## II

### Criticisms of Strict Liability

Statutory-rape laws that foreclose a mistake-of-age defense have been subject to scathing and widespread legal criticism. Beginning in the 1960's and 1970's, a seemingly unanimous front of legal commentary has opposed the concept of strict liability for this type of crime as lacking any sound philosophical, historical, or legal foundation and, what is even worse, as having its origin in faulty and inept judicial analysis of applicable precedents. *See, e.g.,* 1 *Wharton's Criminal Law,* at § 76; 2 Model Penal Code, § 213.6 cmt. 2 at 413–17; LaFave & Scott, *Criminal Law* at § 5.1; L. Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape,* 64 Mich.L.Rev. 105 (1965); R. Tonry, *Statutory Rape: A Critique,* 26 La.L.Rev. 105 (1965); R. Singer, *Strict Criminal Liability: Alabama State Courts Lead the Way Into the Twenty–First Century,* 46 Ala.

L.Rev. 47, 79 (1994); *People v. Hernandez,* 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673, 674 n. 1 (1964) (one of the first contemporary judicial opinions to analyze statutory-rape laws thoroughly). The thrust of this criticism is that strict liability in the context of felony sex offenses cannot be justified either as a public-welfare offense or under the moral-wrong theory—the two apologies typically offered in defense of imposing strict liability.[24]

In brief, strict-liability laws styled as "public welfare offenses" followed in the wake of nineteenth-century industrialization.[25] These regulatory statutes typically imposed strict liability (that is, no *mens rea* or criminal intent need be proved to convict the accused) in response to the need for dependable administrative and regulatory enforcement mechanisms that could contain the potentially widespread harm flowing from expanding industrial and commercial practices. *See Morissette,* 342 U.S. at 252–54, 72 S.Ct. at 244, 96 L.Ed. at 294; *see also* F. Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55 (1933). The usual targets of these public-welfare offenses were food processing, pharmaceuticals, liquor, and traffic offenses. Convictions carried light penalties (usually monetary fines) and imparted scant social stigma. *See Morissette,* 342 U.S. at 253–56, 72 S.Ct. at 244–46, 96 L.Ed. at 295–97; F. Sayre, 33 Colum.L.Rev. at 62–67. They were deemed to be *mala prohibita,* that is, offenses made illegal for reasons of societal convenience or efficiency rather than being *mala in se,* or acts that are inherently wicked or evil from a moral or natural-law standpoint. Regulatory expediency justified the imposition of relatively minor but swift punishment. *See Morissette,* 342 U.S. at 255–56, 72 S.Ct. at 246, 96 L.Ed. at 296; *Garnett,* 632 A.2d at 810–11 (Bell, J., dissenting). But expediency cannot justify the im-

**24.** These modern criticisms are exhaustively reviewed by Justice Bell of the Maryland high court in his scholarly dissenting opinion in *Garnett v. State,* 332 Md. 571, 632 A.2d 797, 810–17 (1993) (Bell, J., dissenting).

**25.** *See, e.g., State v. Hughes,* 16 R.I. 403, 16 A. 911 (1889) (liquor merchant bound to know the intoxicating character of his wares and his illegal sale creates a common nuisance); *State v. Melville,* 11 R.I. 417 (1877) (dealing of faro brands one as a common gambler); *State v. Smith,* 10 R.I. 258 (1872) (sale of adulterated milk subject to fine of up to $100).

position of strict liability in sexual-abuse offenses.

Unlike regulatory prohibitions directed at *mala prohibita* offenses such as the sale of adulterated milk, child molestation does not naturally fall under the heading of statutorily prohibited public-welfare offenses. Child molestation is an inherently contemptible crime against an identifiable victim. To lump such a crime with petty gambling or commercial mislabeling belittles the gravity of intentional sexual-abuse crimes. Conversely, the degree of punishment and societal opprobrium befitting true sexual-abuse crimes cannot be so cavalierly imposed without regard to the culpable intention of the actor as can the light fines and slap-on-the-wrist penalties attached to typical public-welfare offenses.

A second justification commonly advanced in support of strict statutory-rape laws is the "lesser legal wrong" or "moral wrong" theory. The origin of this apology lies in the celebrated English case *Regina v. Prince*, [1875] L.R. 2 Cr.Cas.Res. 154. There the defendant was charged under section 55 of 24 & 25 Vict. c. 100,[26] with illegally taking fourteen-year-old Annie Phillips, who looked much older, from her father's household. A jury found that "the girl went with the prisoner willingly, that she told the prisoner that she was eighteen years of age, that he believed that she was eighteen years of age, and that he had reasonable grounds for so believing." *Id.* at 156. A majority of an en banc panel of English judges held that Prince's reasonable mistake provided no defense. In reaching this conclusion, all the judges recognized the central place held by the concept of *mens rea* in the criminal law but nonetheless denied the defense on two grounds. First, the court attributed to the Legislature an intent "to protect [the parents'] legal right to the possession" of the girl child without the inconvenience of meeting mistake of age as an excuse. *Id.* at 172 (Blackburn, J.). Second, the court adopted what has come to be known as the "moral wrong" theory under which a mistake-of-fact defense will be denied if the defendant's actions, under facts that the defendant reasonably believed to be true, are yet morally or "intrinsically wrong" though not legally wrong in any sense. *Id.* at 176. In *Prince* the intrinsically wrong act was the interference with the possessory rights of the fourteen-year-old's mother and father—not any harm to or corruption of the teenager herself.[27]

A united front of modern legal commentators lambastes this moral-wrong theory as without precedent or foundation in the criminal law. *See, e.g.,* 2 Model Penal Code, § 213.6 cmt. 2 at 414 n.6; LaFave & Scott, § 5.1(c) at 410–11.[28] Furthermore, whatever suasion this theory may have had in a bygone era, that force has now dissipated. Fornication in and of itself is no longer a crime in Rhode Island.[29] If Alex's girlfriend in this

---

**26.** Section 55 of 24 & 25 Vict. c. 100 provided, "Whosoever shall unlawfully take or cause to be taken any unmarried girl, being under the age of sixteen years, out of the possession and against the will of her father or mother, or of any other person having the lawful care or charge of her, shall be guilty of a misdemeanor."

**27.** Interestingly, Bramwell, J., in the same breath explains that "[i]f the taker believed he had the father's consent, though wrongly, he would have no *mens rea;* so if he did not know she was in anyone's possession, nor in the care or charge of anyone." *Regina v. Prince,* [1875] L.R. 2 Cr.Cas. Res. 154, 175.

**28.** Notably *Prince* was rejected by statute ten years after its issuance, at least with respect to statutory rape (defilement) of a girl between thirteen and sixteen years of age. *See* Criminal Law Amendment Act of 1885 (48 & 49 Vict. c. 69) §§ 4 and 5, *reprinted in* 5 Halsbury's *Statutes of England* 907–08 (2d ed.1948). The availability of

the defense provided in the 1885 statute was later limited to first-time offenders under the age of twenty-four by the Criminal Law Amendment Act of 1922, 12 & 13 Geo. 5 ch. 56. *See* Sexual Offences Act of 1956 (4 & 5 Eliz. 2 c. 69) §§ 5 and 6(1)(3), *reprinted in* 8 Halsbury's *Statutes of England* 419–20 notes (3d ed.1969).

At least one scholar has concluded that "reasonable mistake of age has never been denied as a defense in an English statutory rape case." L. Myers, *Reasonable Mistake of Age: A Needed Defense to Statutory Rape,* 64 Mich.L.Rev. 105, 110 (1965).

**29.** *See* P.L.1989, ch. 214, § 1. Even in more puritanical times, punishments for moral transgressions other than those for capital felonies carried a degree of flexibility that § 11–37–8.1 lacks. Thus in 1662 the law required that a fornicator "shall be publickly Whipped in said Town where such Fact shall be Committed with Ten Stripes and no more, *or* pay a Fine or Forty

case had in fact been sixteen (as she allegedly told Alex), no crime of any kind would have been committed by either of them merely by having engaged in consensual sex. *Accord Garnett*, 632 A.2d at 812 (Bell, J., dissenting). And because the General Assembly has been unwilling to say that consensual sexual relations between teenagers over the age of sixteen is as a matter of law intrinsically wrong, we as judges should not be condemning such behavior. It is also safe to predict that this Court would raise more than one set of eyebrows should it say, as did the majority in *Prince*, that a girl under the age of majority is a mere possession of her father. *See Prince*, 2 Cr.Cas.Res. at 172 (Blackburn, J.), 174 (Bramwell, J.). Rather, unless and until the Legislature expressly commands otherwise, I believe that we should adhere to the bedrock principle of the criminal law that "a mistake of facts, on reasonable grounds, to the extent that if the facts were as believed the acts of the prisoner would make him guilty of no criminal offence at all, is an excuse, and that such excuse is implied in every criminal charge and every criminal enactment." *Id.* at 170 (Brett, J., dissenting).

Even though academic criticism against strict liability in statutory-rape cases does not bind this Court or a contrary-minded General Assembly, it does reflect a profound shift in legal thought about the mistake-of-age defense in the context of sex offenses. Moreover, it should give this Court pause before it decides to detonate a deafening blast of strict-liability within the silent chambers of Rhode Island's child-molestation laws—especially when we have so recently declared otherwise in the *Griffith* and *Tevay*

cases. This is especially so when the debate on this issue reached a crescendo during the very period in which our Legislature enacted its revised chapter on sexual assault and yet still conspicuously omitted any reference to child molestation that would constitute it as a strict-liability offense. Thus we should assume that the Legislature was well aware of the widespread extant criticism of strict-liability statutory-rape laws and would not have been likely to adopt such a widely condemned position as has been espoused by the majority without including any explanation or plain language to suggest such a strict-liability interpretation was warranted.

## III

### The Emerging Rule

The last of the triad of points I would make is that a growing number of American jurisdictions have now adopted a new and still emerging American rule that antiquates judicially imposed strict-liability schemes for statutory rape. The Model Penal Code of 1962(MPC) expressly rejects strict liability in the rape or sexual-assault context. Section 213.3(1)(a) of that code, the rough equivalent of our § 11–37–8.1, would prohibit sexual intercourse with a female under the age of sixteen when the actor is at least four years older than the victim.[30] But the MPC expressly allows a reasonable-mistake-of-fact defense when, as here, the alleged victim is at least ten years old, *see* 2 MPC § 213.6 cmt. 2, although the MPC does adopt an irrebuttable presumption that a child victim actually under the age of ten cannot be reasonably taken for a sixteen-year-old.[31] The MPC approach thus has the effect of attach-

---

Shillings into the Town Treasury, to and for the Use of the Poor of such Town." Acts and Laws of His Majesties Colony of Rhode Island and Providence Plantations in America, at 7, *reprinted in* J. Cushing, *The Earliest Acts and Laws of the Colony of Rhode Island and Providence Plantations: 1647–1719* at 143 (1977). (Emphasis added.)

**30.** Section 213.3(1)(a) of the Model Penal Code (MPC) provides, "Corruption of Minors and Seduction (1) *Offense Defined.* A male who has sexual intercourse with a female not his wife *** is guilty of an offense if: (a) the other person is less than [16] years old and the actor is at least

[4] years older than the other person." (Brackets in original.)

**31.** Section 213.6(i) of the MPC provides, "Provisions Generally Applicable to Article 213(1) *Mistake as to Age.* Whenever in this Article the criminality of conduct depends on a child's being below the age of 10, it is no defense that the actor did not know the child's age, or reasonably believed the child to be older than 10. *When criminality depends on the child's being below a critical age other than 10, it is a defense for the actor to prove by a preponderance of the evidence that he reasonably believed the child to be above the critical age.*" (Emphasis added.)

ing a *"mens rea* of [at least] recklessness to the age element in statutory rape." 2 MPC, § 213.6 cmt.2 at 415.[32]

Today some fifteen American states have adopted the MPC in some form. Some set a critical age higher than the MPC's common-law designation of ten (occasionally as high as fourteen or sixteen) for the no-credible-error presumption, but all these states establish penalties far more flexible than our rigid twenty-year minimum sentence—even for the most egregious type of forcible child molestation.[33] Six additional states expressly provide for a mistake-of-fact defense without age limitation,[34] and two states, California and New Mexico, have judicially recognized a mistake-of-age defense by construction of generic statutory provisions similar to ours. *See People v. Hernandez,* 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673, 677 (1964) (en banc); *Perez v. State,* 111 N.M. 160, 803 P.2d 249, 251 (1990) (mistake-of-fact defense available if victim over twelve years old where "the legislature's failure to bring forward either the prohibition of knowledge of age as a defense * * * leaves the court without guidance"). And Alaska, as noted, has held the defense to be constitutionally mandated.

In *Hernandez* the Supreme Court of California departed from its own prior decisional law that had rejected the mistake-of-fact defense in the statutory-rape context. California's statute, which punished underage intercourse as a mere misdemeanor, contained general language similar to that employed in our statute—that is language devoid of any explicit reference to an intent requirement or to strict liability. The *Hernandez* court decided that such a statute left no room for strict liability. In explaining its holding on this score, the California high court noted, "The severe penalty imposed for [statutory rape], the serious loss of reputation convic-

**32.** England adopted a similar approach as early as 1885, expressly providing for the mistake-of-age defense for its law punishing defilement of a girl between the ages of thirteen and sixteen. *See* Criminal Law Amendment Act of 1885 (48 & 49 Vict. c. 69) §§ 4 and 5, *reprinted in* 5 Halsbury's *Statutes of England* 907–08 (2d ed.1948). The English statute remains silent with respect to the defense as applied to a provision punishing intercourse with a girl under the age of thirteen, but provides for a sentence of any term of years. *See* 10 Halsbury's *The Laws of England* § 1446, at 750 (3d ed.1955).

**33.** *See* Ariz.Rev.Stat.Ann. §§ 13–701(C) and 13–1407(B) (West 1997) (critical age fourteen and seven-year maximum sentence); Ark.Code Ann. §§ 5–4–401(a)(1) and 5–14–103(a)(4) (Michie 1997) (critical age fourteen and forty-year maximum sentence); Colo.Rev.Stat.Ann. §§ 18–1–105 and 18–3–403(1)(e) (West 1997) (critical age fifteen and two-to-eight-year sentence); Haw.Rev. Stat. §§ 702–204, 706–659 and 707–730(b) (1996) (mandating a *mens rea* for every crime, critical age fourteen, and twenty-year maximum sentence); 720 Ill.Comp.Stat. 5/12–16(d), 5/12–17 and 730 Ill.Comp.Stat. 5/5–8–1(a)(1)(5) (West 1997) (critical age thirteen and three-to-seven-year sentence); Me.Rev.Stat.Ann. tit. 17–A, § 254(1), (2) (West 1997) (critical age fourteen and actor must be nineteen years of age and five years older than victim to constitute crime); Minn.Stat. § 609.344(1)(b) (1997) (critical age thirteen and five or fifteen-year maximum depending on relative ages); Mo.Rev.Stat. § 566.020 (1994) (critical age thirteen and five-year mandatory minimum if child over twelve); Mont.Code Ann. §§ 45–5–502, 45–5–511 (1992) (critical age thirteen); N.D.Cent.Code §§ 12.1–20–01(2), 12.1–20–03(1), 12.1–32–01(3) (1997) (critical age fifteen and no minimum sentence); Page's Ohio Rev.Code Ann. §§ 2907.02(A)(1)(b), 2907.04(A) and 2929.14 (1996) (age thirteen separates ten-year maximum sentence for strict-liability felony from misdemeanor); Or.Rev.Stat. §§ 161.605, 163.325 (1997) (critical age sixteen and no minimum sentence); 18 Pa.Cons.Stat. §§ 1103(2), 3102 and 3122 (West 1998) (critical age fourteen and ten-year maximum); W.Va.Code §§ 61–8B–3, 61–8B–9 and 61–8B–12 (Michie 1997) (critical age of eleven and one-to-five-year range if victim less than age eleven and ninety days if victim under age sixteen); Wyo. Stat.Ann. § 6–2–303, 6–2–306(iii) and 6–2–308 (1997) (critical age fourteen raised from twelve in 1997 and fifteen-year maximum sentence if actor more than four years older and victim over age twelve).

**34.** Conn.Gen.Stat.Ann. § 53a–67(a) cmt. (West 1998) (following *People v. Hernandez,* 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673 (1964) (en banc)); Del.Code Ann. tit. 11, § 251 (requiring mental state unless legislative intent "plainly appears") and tit. 11 § 441(1) (Michie 1995) (recognizing mistake of fact generally); Ind.Code Ann. § 35–42–4–3(e) (reasonable mistake-of-fact defense to child molestation) and § 35–41–3–7 (mistake of fact generally); Ky.Rev.Stat.Ann. § 510.030 (Michie 1990); Tenn.Code Ann. § 39–11–502 (Michie 1997; *see also State v. Parker,* 887 S.W.2d 825 (Tenn.Crim.App.1994) (general mistake-of-fact provision extends to sexual offenses); Wash.Rev.Code § 9A.44.030(2) (West 1998) (allows mistake-of-fact defense when reasonable belief predicated on victim's declarations).

tion entails, \* \* \* and the fact that it has been regarded for centuries as a crime involving moral turpitude, make it extremely unlikely that the Legislature meant to include the morally innocent to make sure the guilty did not escape." *Hernandez*, 39 Cal. Rptr. 361, 393 P.2d at 677 (quoting and adopting the reasoning previously applied to its bigamy statute in *People v. Vogel*, 46 Cal.2d 798, 299 P.2d 850, 855 (1956) (en banc)). The California court also noted that no conflict exists between the principle that culpability flows only from malicious intent and the policy that participants in sexual activity are charged with the duty to ascertain the age of their bedfellows:

"Our departure from [prior precedent] is in no manner indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually active female from exploitation. No respon-

sible person would hesitate to condemn as untenable a claimed good faith belief in the age of consent of an 'infant' female whose obviously tender years preclude the existence of reasonable grounds for that belief. \* \* \* We hold only that in the absence of a legislative direction otherwise, a charge of statutory rape is defensible wherein a criminal intent is lacking." *Hernandez*, 39 Cal.Rptr. 361, 393 P.2d at 677.

With *Hernandez* and the MPC taking the lead, twenty-three American jurisdictions, nearly half, now explicitly recognize some form of the mistake-of-age defense.

Of those states that arguably remain in the strict-liability camp, seven states expressly disallow the defense by statute.[35] The remaining nineteen jurisdictions either have judicial decisions construing silent rape statutes like ours[36] or are blithely assumed to

**35.** D.C.Code Ann. § 22–4111 (Michie 1996) (but no minimum sentence); Fla.Stat.Ann. § 794.021 (1998); La.Rev.Stat.Ann. § 14:80 (West 1988) (ten-year maximum sentence and actor must be at least two years older); N.J.Stat.Ann. §§ 2C:14–2, 2C:14–5(c) and 2C:14–6 (West 1995) (actor must be at least four years older, and five-year mandatory minimum only for second offense); N.Y. Penal Law §§ 15.20(3) and 130.35 (West 1998) (but no minimum sentence unless victim under age eleven); Utah Code Ann. §§ 76–2–304.5 and 76–3–203 (1995) (abrogating decision in *State v. Elton*, 680 P.2d 727 (Utah 1984), which implied a mistake-of-fact defense and five-year minimum sentence); Wis.Stat.Ann. § 939.43(2) (West 1996) (forty-year maximum sentence of incarceration).

**36.** *Alabama: Miller v. State*, 16 Ala.App. 534, 79 So. 314 (1918); Ala.Code §§ 13A–5–6, 13A–6–61 and 13A–6–62 (1994) (ten-year minimum if victim less than twelve, otherwise two-to-twenty-year sentence); *Georgia: Tant v. State*, 158 Ga. App. 624, 281 S.E.2d 357 (1981); Ga.Code Ann. § 16–6–3(b) (1996) (one-to-twenty-year sentence if actor is less than twenty); *Idaho: State v. Stiffler*, 117 Idaho 405, 788 P.2d 220 (1990) (one-year minimum and court may consider mitigating factors); Idaho Code § 18–6104 (1997); *Iowa: State v. Tague*, 310 N.W.2d 209 (1981); Iowa Code Ann. §§ 709.4(2), 902.9 (West 1998) (ten-year maximum sentence); *Kansas:* no cases on point; Kan.Stat .Ann. §§ 21–3502, 21–4501(d)(1) (1995) (but two-to-ten-year sentence); *Maryland: Garnett v. State*, 332 Md. 571, 632 A.2d 797 (1993); Md.Code Ann., Crimes & Pun., Article 27, § 464A(b) (1996) (but twenty-year maximum sentence); *Massachusetts: Commonwealth v. Knap*, 412 Mass. 712, 592 N.E.2d 747 (1992); Mass.Gen.Laws, ch. 265, § 23 (West 1998) (five-year minimum sentence); *Michigan:*

*People v. Cash*, 419 Mich. 230, 351 N.W.2d 822 (1984); Mich.Comp.Laws Ann. § 750.520b(2) (West 1990) (no minimum sentence); *Mississippi: Collins v. State*, 691 So.2d 918 (Miss.1997) (refusing mistake-of-fact defense in forcible capital-rape-of-child-under-fourteen prosecution where proposed instruction not limited to reasonable mistake and no evidence of good-faith belief); *Warren v. State*, 456 So.2d 735 (Miss. 1984) (death or life sentence fully discretionary); *Nebraska: State v. Campbell*, 239 Neb. 14, 473 N.W.2d 420 (1991) (even active misrepresentation no defense); Neb.Rev.Stat. §§ 28–105 and 28–319 (1995) (but one-to-fifty-year sentencing range); *Nevada: Jenkins v. State*, 110 Nev. 865, 877 P.2d 1063 (1994); Nev.Rev.Stat.Ann. §§ 193.140, 200.366(3)(b) (Michie 1997) (one-year maximum if defendant under age twenty-one); *New Hampshire: Goodrow v. Perrin*, 119 N.H. 483, 403 A.2d 864 (1979) (divided court) (mistake-of-fact defense not constitutionally mandated); N.H.Rev.Stat.Ann. §§ 632–A:3 and 651:2(II)(b) (1996) (but seven-year maximum and judicial discretion); *North Carolina: State v. Murry*, 277 N.C. 197, 176 S.E.2d 738 (1970); N.C.Gen.Stat. §§ 14–1.1(a)(2) and 14–27.2 (1997) (no minimum sentence; life imprisonment maximum); *Oklahoma: Reid v. State*, 290 P.2d 775 (Okla.Crim.App.1956); Okla .Stat.Ann. ·tit. 21, §§ 1112 and 1115 (West 1983) (five-year mandatory minimum sentence, no crime if defendant under age eighteen and victim over age fourteen and consents); *South Carolina:* no cases on point; S.C.Code Ann. § 16–3–653 (1985) (twenty-year maximum where victim over age eleven and judicial discretion); *South Dakota: State v. Fulks*, 83 S.D. 433, 160 N.W.2d 418 (1968), *overruled on other grounds, State v. Ree*, 331 N.W.2d 557, 561 (S.D.1983); S.D. Codified Laws §§ 22–6–1 and 22–22–1(5) (fifteen-year maxi-

impose strict liability without a definite statute or judicial opinion directly on point.[37] Notably, of these states that putatively impose strict liability, almost all impose no mandatory minimum sentence or provide for a relatively low minimum; and many of these statutes incorporate flexibility measures such as imposing a lighter sentence or no criminal liability when the actor and the alleged victim are relatively close in age. *See* notes 33, 35, 36, *supra.*

Of those states in which strict liability is judicially mandated rather than decreed by statute, only eleven state high courts have visited the mistake-of-age issue in the context of statutory rape since the resurgence of interest in this question during the mid-1960s. Virginia, for example, last squarely addressed mistake of age as a defense to statutory rape in 1878. *See Lawrence v. Commonwealth,* 71 Va. 845 (1878). Accordingly in many jurisdictions the only authority for a strict-liability rule is a musty judicial decision—the product of an era of radically different mores and social attitudes—when any extramarital sex, let alone sex between consenting teenagers, was generally considered morally reprehensible. Obviously these courts have not yet had an opportunity to consider or to respond to the contemporary criticism leveled against their earlier strict-liability holdings. Thus it is probable that at least some of these courts (like California) would today reject strict liability if given the chance to do so.[38]

Moreover, when recent judicial decisions have discovered a legislative intent to impose strict liability they have done so on legislative evidence that is far more persuasive and extensive than that on which we have to content ourselves. In *Garnett,* for example, the Maryland high court found that Maryland's legislature had considered adopting a mistake-of-fact defense in a number of bills or committee reports but had ultimately rejected the proposal. 632 A.2d at 804–05; *see also State v. Searles,* 159 Vt. 525, 621 A.2d 1281, 1283 (1993). We have no such legislative history before us.

The Massachusetts Supreme Judicial Court, as noted earlier, relied on the canon of statutory construction that when a statute is reenacted following a judicial pronouncement, the legislature is deemed to adopt that judicial interpretation as its own intention. Thus the Massachusetts legislature's failure to amend the provision at issue was taken as confirmation of the judicial notion set out in nineteenth-century Massachusetts case law that mistake of age was no defense to engaging in sex with a child. *See, e.g., Commonwealth v. Miller,* 385 Mass. 521, 432 N.E.2d 463, 465 (1982). Similarly in *People v. Cash,* 419 Mich. 230, 351 N.W.2d 822 (1984), the Michigan high court decided that its legislature, by reenacting a statutory-rape law, had tacitly acceded to a 1922 holding of that court rejecting the mistake-of-age defense. *Id.* 351

mum sentence if victim over age ten); *Texas: Vasquez v. State,* 622 S.W.2d 864 (Tex.Crim.App. 1981); Tex.Penal Code Ann. §§ 12.33(a) and 22 .011 (West 1994) (two-to-twenty-year range and defendant three years older than victim); *Vermont: State v. Searles,* 159 Vt. 525, 621 A.2d 1281 (1993); Vt.Stat.Ann. tit. 13, § 3252(b)(2) (1994) (no minimum and thirty-five-year maximum sentence); *Virginia: Lawrence v. Commonwealth,* 71 Va. 845 (1878); Va.Code Ann. § 18.2–67.1 (Michie 1996) (mandatory five-year minimum sentence if child less than thirteen, otherwise no minimum).

37. Interestingly, the MPC commentators assumed without elaboration that Rhode Island would impose strict liability. *See* 2 MPC, § 213.6 cmt. 2 n.5 (1962). Other commentary dubiously attributes strict liability to states that clearly follow the MPC model. *See* C. Campbell, *Mistake or Lack of Information As To Victim's Age As Defense To Statutory Rape,* 46 A.L.R.5th 499 (1997).

38. Alabama is one of numerous likely candidates. One commentator has attacked Alabama's leading case on the mistake-of-age defense to statutory rape, a decision rendered in 1918, as citing no controlling Alabama cases and erroneously relying on precedents that "were all contrary to this point" or "totally off point." *See* Singer, *Strict Criminal Liability: Alabama State Courts Lead the Way into the Twenty–First Century,* 46 Ala. L.Rev. 47, 79 (1994) (discussing *Miller v. State,* 16 Ala.App. 534, 79 So. 314 (1918)). The author concludes that §§ 13A–2–4 and 13A–2–6 of Alabama's 1977 penal code (which expressly recognize mistake-of-fact defenses in blanket terms and mandate a *mens rea* element for every crime absent a clear legislative intent to impose strict liability) have legislatively abrogated the decision in *Miller.*

N.W.2d at 826.[39] In contrast Rhode Island had no prior case law for the General Assembly to adopt *sub silentio* when it enacted the current statutory-rape provision in 1979. Moreover, our twenty-year mandatory-minimum term of incarceration withdraws all discretion from the sentencing court save for the option of suspending a portion of the years to be served—a measure of somewhat illusory flexibility because it can be nullified by a later probationary infraction as minor as frequenting a tavern. *See* G.L.1956 § 12–19–8(a) (sentence may be suspended "on such terms and conditions as the court may fix"); A. Campbell, *Law of Sentencing* § 5.4, at 116 (2d ed.1991) (wide range of probation conditions based upon even noncriminal conduct may be imposed, including refraining from consuming alcohol or associating with particular persons).

For the above-stated reasons I am unwilling to attribute to the General Assembly an unexpressed intention to place Rhode Island on the outermost fringes of current legal thinking and actual practice regarding the mistake-of-age defense, especially when virtually no other state in the whole country imposes such an inflexibly harsh penalty without regard to the defendant's true culpability.[40] In my judgment the majority's conversion of § 11–37–8.1 into a strict-liability crime in mistake-of-age cases, coupled with the statute's mandatory minimum twenty-year prison sentence and convicted sex-offender status, creates an unparalleled and

unjustified "double-whammy" that rains down its crushing blows indiscriminately upon innocently intentioned teenage lovers and heinous child molesters alike. Certainly the Legislature may enact strict measures to discourage sexual intercourse with minors or to avoid teenage pregnancy. But a mandatory twenty-years-to-life sentencing range is utterly out of proportion to this goal if mistake of age is not available as a defense.

Furthermore, the General Assembly's manifest aim to punish and to deter intentional sexual molestation of children does not require the judicial creation of strict liability in this situation. Allowing a criminal defendant accused of sexual assault upon a teenaged minor to claim mistake of age as a defense will neither burden prosecutors unduly nor insulate true child molesters from societal retribution. A jury can sort out a legitimate mistake-of-age defense in this context from fabricated excuses.[41]

In sum, absent plain language in a statute that indicates otherwise, a teenaged boy's improvident participation in premarital sex with a teenaged girl that he reasonably believed was old enough to consent should not result in that teenager beginning his adult life in prison as a convicted child molester with a mandatory minimum term of twenty years in jail hanging over his head for the foreseeable future.

For these reasons I would reverse the trial court's conviction and remand this case for a

**39.** Notably, the Michigan decision also rejected a constitutional challenge to strict liability, noting that the highly flexible punishment attached to the offense, which provided for incarceration for "any term of years," left open the possibility that "any mitigating and ameliorating evidence in support of a defendant's mistaken belief as to the complainant's age * * * be considered by the trial judge at the time of sentencing." *People v. Cash*, 419 Mich. 230, 351 N.W.2d 822, 827–28 (1984).

**40.** The majority cites to Mississippi as the last bastion of puritanical justice because its statutory-rape laws provide for the possibility of capital punishment in fitting cases of child rape. But even Mississippi—unlike Rhode Island—allows the trial justice broad discretion in sentencing. Thus in *Warren v. State*, 456 So.2d 735, 738–39 (Miss.1984), the high court of Mississippi noted that the former version of Miss.Code Ann. § 97–

3–65 that read, "[the defendant] upon conviction *shall be imprisoned for life* in the state penitentiary if the jury by its verdict so prescribes," allowed the court to "affix the penalty at imprisonment in the state penitentiary for *any term as the court in its discretion may determine* less than life" if the jury did not choose to impose a life sentence. (Emphases added.) Although the Mississippi statute was later amended to provide for *the possibility of capital punishment as well as* imprisonment, no Mississippi cases suggest that this judicial discretion in sentencing has been removed. *See Collins v. State*, 691 So.2d 918, 922 (Miss.1997) ("a sentence of death or life imprisonment may be imposed").

**41.** Accordingly, I *would require much clearer* evidence of legislative intent to negate a mistake-of-age defense before I would alter this Court's and the common law's previous insistence on *mens rea* as an element of every criminal offense.

new trial that would allow Alex to raise a reasonable-mistake-of-age defense to the charges.